# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROBERT STROUGO, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 9770-CB |
| AARON P. HOLLANDER, STANLEY J. HILL, JOSEPH J. LHOTA, ITSIK MAARAVI, and FIRST AVIATION SERVICES, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION

Date Submitted:  March 11, 2015
Date Decided:  March 16, 2015

Sidney S. Liebesman and Lisa Zwally Brown of MONTGOMERY MCCRACKEN WALKER & RHOADS, LLP, Wilmington, Delaware; Gustavo F. Bruckner and Alla Zayenchik of POMERANTZ LLP, New York, New York; *Attorneys for Plaintiff.*

Francis G.X. Pileggi, Gary W. Lipkin and Aimee M. Czachorowski of ECKERT SEAMANS CHERIN & MELLOTT, LLC; *Attorneys for Defendants*.

**BOUCHARD, C.**

# I.   INTRODUCTION

This action involves determining whether a Delaware corporation's non-reciprocal fee-shifting bylaw (the "Bylaw") applies to a former stockholder's challenge to the fairness of a 10,000-to-1 reverse stock split (the "Reverse Stock Split") that the corporation undertook at the behest of its Chief Executive Officer and controlling stockholder in order to take the company private.

On May 30, 2014, defendant First Aviation Services, Inc. ("First Aviation" or the "Company") completed the Reverse Stock Split, which had the effect of involuntarily cashing out the plaintiff. Four days later, on June 3, 2014, the directors of First Aviation adopted the Bylaw. On June 14, 2014, the plaintiff initiated this action on behalf of himself and a class of former stockholders of the Company who similarly had been cashed out, alleging that the Reverse Stock Split was unfair.

The defendants, First Aviation and its directors, argue that the Bylaw is not only facially valid, but also enforceable here. According to the defendants, unless the plaintiff obtains "a judgment on the merits that substantially achieves, in substance and amount, the full remedy sought," then the plaintiff (and presumably his counsel) will be liable for the defendants' legal fees incurred in this case. In addition to challenging the Reverse Stock Split, the plaintiff amended his complaint to challenge the Bylaw.

The question of whether the Bylaw is facially valid under Delaware law is not presently before the Court. Rather, the plaintiff has moved for partial judgment on the pleadings that the Bylaw does not apply in this case because it was adopted after the Reverse Stock Split had been consummated.

1

In this opinion, I conclude based on principles of contract law that the Bylaw does not apply to this case because it was adopted after the plaintiff was cashed out of the Company by operation of the Reverse Stock Split. More specifically, I hold that changes made to the Company's bylaws after the plaintiff was cashed out are not binding on him for the same reason that a non-party to a contract is not bound by the terms of that contract. I also conclude that Section 109(b) of the Delaware General Corporation Law (the "DGCL") does not authorize the adoption of bylaws to regulate the rights or powers of former stockholders whose interests in the corporation already have been eliminated. Therefore, I grant the plaintiff's motion for partial judgment on the pleadings.

## II. BACKGROUND[1]

### A. The Parties

Defendant First Aviation, a Delaware corporation based in Westport, Connecticut, provides repair, overhaul, and related services to the aviation industry. In 2007, First Aviation became a non-SEC reporting company. As of October 24, 2011, First Aviation's shares traded on the OTC US Market stock exchange.[2]

Defendants Aaron P. Hollander, Stanley J. Hill, Joseph J. Lhota, and Itsik Maaravi were the four directors of the Company (collectively, the "Board," and with First

---

[1] Unless noted otherwise, the facts recited in this opinion are based on the well-pled facts admitted to be true in Defendants' Answer to Amended Complaint (the "Answer"). *See Warner Commc'ns Inc. v. Chris-Craft Indus., Inc.*, 583 A.2d 962, 965 (Del. Ch. 1989), *aff'd*, 567 A.2d 419 (Del. 1989) (TABLE).

[2] Plaintiff alleges that First Aviation had 780,245 shares issued and outstanding as of that date. Am. Compl. ¶¶ 17, 25. Defendants deny this allegation. Answer ¶¶ 17, 25.

2

Aviation, the "Defendants") at all relevant times. Hollander was the Chairman of the Board and the Company's Chief Executive Officer. As of June 2013, individually and through two entities he controlled,[3] Hollander owned approximately 45.5% of the Company's common equity and 64.5% of its Common A voting stock. Hollander "maintained control over the day to day operations of the Company and had managerial supremacy."[4]

Plaintiff Robert Strougo ("Plaintiff") was a stockholder of the Company at all relevant times until the consummation of the Reverse Stock Split. Plaintiff brings this putative class action individually and on behalf of all other First Aviation stockholders, excluding Defendants and their affiliates, who were "freezed out" in the Reverse Stock Split.[5]

**B.     First Aviation Announces, and then Completes, the Reverse Stock Split**

On May 16, 2014, the Company announced that it had established a Special Committee of the Board, consisting of Lhota and Hill, to analyze a potential reverse stock split transaction.[6] That same day, the Company announced that the Board approved the Reverse Stock Split, which consisted of a 10,000-to-1 reverse stock split at a pre-split

---

[3] Those entities are First Equity Group, Inc., of which Hollander was the Chairman and CEO; and JEM III, LLC, of which he was the sole voting shareholder. Answer ¶ 18.

[4] *Id.* ¶ 38.

[5] Am. Compl. ¶ 24.

[6] Answer ¶ 3.

price of $8.40 per share.[7]  Both members of the Special Committee held enough First Aviation stock at the time to remain stockholders of the Company following the Reverse Stock Split.[8]

On May 30, 2014, the Reverse Stock Split was completed.[9]  The effect of the Reverse Stock Split was to eliminate the interests of Plaintiff and the putative class and thereby make First Aviation a privately owned company.  After the Reverse Stock Split, Hollander and the entities he controlled remained stockholders of the Company.

### C.    First Aviation's Board Adopts the Bylaw

On June 3, 2014, the First Aviation Board adopted the Bylaw, which provides, in its entirety:

> Section VII.8.  Expenses for Certain Actions.  In the event that (i) any current or prior stockholder or anyone on their behalf (collectively a "Claiming Party") initiates or asserts and [sic] claim or counterclaim (collectively a "Claim"), or joins, offers substantial assistance to or has a direct financial interest in any Claim against the Corporation or any director, officer, assistant officer or other employee of the Corporation, and (ii) the Claiming Party (or the third party that received substantial assistance from the Claiming Party or in whose Claim the Claiming Party has a direct financial interest) does not obtain a judgment on the merits that substantially achieves, in substance and amount, the full remedy sought, then each Claiming Party shall be obligated jointly and severally to reimburse the Corporation and any such director, officer, assistant officer or employee for all fees, costs and expenses of every kind and description

---

[7] *Id.* ¶ 27.  On November 18, 2013, a trade of First Aviation stock occurred at $11.00 per share.  *Id.* ¶¶ 9, 29, 41.

[8] *Id.* ¶¶ 3, 19-20, 40.  Although not in response to any factual allegation in the Complaint, Defendants assert that Hill sold all his stock back to the Company at the $8.40 per share contemplated in the Reverse Stock Split.  *Id.* ¶¶ 3, 6, 40.

[9] *Id.* ¶ 5.

(including, but not limited to, all reasonable attorneys' fees and other litigation expenses) that the parties may incur in connection with such Claim.[10]

The plain terms of the Bylaw quoted above purport to create fee exposure not only for former stockholders of the Company, but for anyone acting on their behalf who "joins, offers substantial assistance to or has a direct financial interest in" any claim against the directors challenging the Reverse Stock Split. This language presumably purports to extend the application of the Bylaw to, among other persons, Plaintiff's counsel "jointly and severally."

Defendants assert that the Bylaw was modeled on the non-reciprocal fee-shifting bylaw of a non-stock member corporation that was the subject of the Delaware Supreme Court's decision in *ATP Tour, Inc. v. Deutscher Tennis Bund*.[11] There was no public announcement informing First Aviation's stockholders that the Board had adopted the Bylaw.[12] According to Defendants, Plaintiff and his counsel were first informed of the Bylaw "shortly after this lawsuit was filed."[13]

---

[10] *Id.* ¶ 56 (emphasis added). On the same day, the Board adopted a forum selection bylaw that designates "state or federal court[s] located within the state of Delaware" as the exclusive forum for the Company's intra-corporate disputes. *Id.* The forum selection bylaw is not at issue on the present motion.

[11] 91 A.3d 554 (Del. 2014); Defs.' Ans. Br. 2-3.

[12] Answer ¶ 86.

[13] Defs.' Ans. Br. 5. Plaintiff claims this occurred on July 22, 2014. Pl.'s Op. Br. 4.

### D.    Procedural History

On June 16, 2014, Plaintiff initiated this action. On September 24, 2014, Plaintiff filed the Amended Complaint, which asserts five causes of action: breach of fiduciary duty against the Board (Count I); breach of fiduciary duty against Hollander as the Company's *de facto* controlling stockholder (Count II); a challenge to the Bylaw as invalid and unenforceable under 8 *Del. C.* § 145 (Count III); a challenge to the Bylaw as void under 8 *Del. C.* § 144 (Count IV); and a challenge to the Bylaw as not entirely fair, reasonable, or equitable (Count V).

On October 7, 2014, I granted Plaintiff's request to move for summary judgment on Counts III-V challenging the Bylaw and to stay Counts I-II pending resolution of the summary judgment motion. I entered a stipulated order to that effect on October 17, 2014.

On October 24, 2014, Defendants filed the Answer. On November 25, 2014, I granted Plaintiff's request to move for partial judgment on the pleadings on the discrete issue as to whether the Bylaw applies to this lawsuit given the timing of its adoption. I entered another stipulated order to that effect on December 2, 2014.

Briefing on the motion for partial judgment on the pleadings was completed on February 13, 2015. On March 11, 2015, I heard oral argument on the motion.

## III.    LEGAL ANALYSIS

### A.    Legal Standard

A plaintiff's motion for judgment on the pleadings under Court of Chancery Rule 12(c) must be denied unless, accepting as true all well-pled facts admitted in the answer

6

and drawing all reasonable inferences from those facts in the defendant's favor,[14] "no material issue of fact exists and the movant is entitled to judgment as a matter of law."[15] The proper interpretation of an unambiguous contract or statute is a question of law that is appropriately resolved on a motion for judgment on the pleadings.[16]

## B.      The Parties' Contentions

Before summarizing the parties' positions, it is worth pausing to consider some of the implications of the Bylaw and what is not presently before the Court.

At its heart, this case concerns a transaction in which a controller stockholder with admitted "managerial supremacy"[17] received differential treatment. As such, the entire fairness standard presumably would apply to Plaintiff's breach of fiduciary duty claims challenging the Reverse Stock Split.[18] By definition, every member of the putative class

---

[14] *See Warner Commc'ns Inc.*, 583 A.2d at 965.

[15] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993); *see also* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1368 (3d ed. 2004).

[16] *See Jana Master Fund, Ltd. v. CNET Networks, Inc.*, 954 A.2d 335, 338 (Del. Ch. 2008) ("Because a corporation's bylaws and charter are contracts among its shareholders, and because the construction of a contract is purely a question of law, judgment on the pleadings is an appropriate mechanism for resolving the present dispute[.]"); *see also Dambro v. Meyer*, 974 A.2d 121, 129 (Del. 2009) ("Questions of statutory interpretation are questions of law[.]").

[17] Answer ¶ 38.

[18] *See, e.g.*, *Reis v. Hazelett Strip-Casting Corp.*, 28 A.3d 442, 460 (Del. Ch. 2011) (subjecting a reverse stock split transaction undertaken at the behest of a corporation's controlling stockholder to entire fairness review). It is unclear from the pleadings if sufficient procedural protections were in place in connection with the approval of the Reverse Stock Split (*e.g.*, utilization of a duly empowered and properly functioning

7

of stockholders who was cashed out in the Reverse Stock Split received less than $84,000 in that transaction (*i.e.*, 10,000 shares x $8.40 per share). As a practical matter, therefore, applying the Bylaw in this case would have the effect of immunizing the Reverse Stock Split from judicial review because, in my view, no rational stockholder—and no rational plaintiff's lawyer—would risk having to pay the Defendants' uncapped attorneys' fees to vindicate the rights of the Company's minority stockholders, even though the Reverse Stock Split appears to be precisely the type of transaction that should be subject to Delaware's most exacting standard of review to protect against fiduciary misconduct.[19] This reality demonstrates the serious policy questions implicated by fee-shifting bylaws in general, including whether it would be statutorily permissible and/or equitable[20] to

---

special committee consisting of independent directors and/or of a majority-of-the minority stockholder vote with proper disclosure and free of coercion) to warrant either a shift in the burden of proof or the application of business judgment review. *See generally Kahn v. M & F Worldwide Corp.*, 88 A.3d 635 (Del. 2014). Asked how this case could not be subject to entire fairness review, Defendants' counsel acknowledged that entire fairness is "likely to apply." Tr. of Oral Arg. 29-30.

[19] Tellingly, in the only other case in this Court of which I am aware in which a non-reciprocal fee-shifting bylaw has been the subject of litigation, the stockholder plaintiff moved to invalidate the fee-shifting bylaw or, alternatively, to dismiss the action and to permit plaintiff's counsel to withdraw. *See* Mot. to Invalidate Retroactive Fee-Shifting and Surety Bylaw or, in the Alternative, to Dismiss and Withdraw Counsel, *Kastis v. Carter*, C.A. No. 8657-CB (Del. Ch. July 21, 2014). Ultimately, the defendants in that case agreed not to apply the bylaw to any aspect of that derivative action.

[20] *See generally ATP*, 91 A.3d at 558 ("Bylaws that may otherwise be facially valid will not be enforced if adopted or used for an inequitable purpose."); *Schnell v. Chris-Craft Indus., Inc.*, 285 A.2d 437, 439 (Del. 1971) ("[I]nequitable action does not become permissible simply because it is legally possible.").

adopt bylaws that functionally deprive stockholders of an important right: the right to sue to vindicate their interests as stockholders.[21]

Ultimately, I do not need to reach these and many other important questions implicated by fee-shifting bylaws because the present motion focuses on the timing of the Bylaw's adoption. Plaintiff contends that the Bylaw does not apply here for essentially three reasons. First, Plaintiff argues that the Bylaw cannot apply to his lawsuit because, under Delaware contract law, "[o]nce [his] relationship with the corporation was terminated through the effectuation of the Reverse Stock Split, [he] was no longer a party to the [corporate] contract, and thus no longer bound by any future amendment to the terms of the company's charter or bylaws."[22] Second, he submits that the Bylaw is inconsistent with 8 *Del. C.* § 109(b) because that statute does not permit a bylaw that regulates the rights or powers of individuals or entities who were no longer stockholders of the corporation when the bylaw was adopted.[23] Third, and more generally, Plaintiff

---

[21] Modern corporate law recognizes that stockholders have three fundamental, substantive rights: to vote, to sell, and to sue. *See, e.g.*, William T. Allen, et al., *Commentaries and Cases on the Law of Business Organization* 177 (2d ed. 2007) (observing that a noted corporate law scholar "summarized the default powers of shareholders as three: the right to vote, the right to sell, and the right to sue"); *see also* Leo E. Strine, Jr., *Can We Do Better by Ordinary Investors? A Pragmatic Reaction to the Dueling Ideological Mythologists of Corporate Law*, 114 Colum. L. Rev. 449, 453-54 (2014) ("In American corporate law, only stockholders get to elect directors, vote on corporate transactions and charter amendments, and sue to enforce the corporation's compliance with the corporate law and the directors' compliance with their fiduciary duties.").

[22] Pl.'s Op. Br. 11.

[23] *Id.* 16.

9

maintains that applying the Bylaw would be inconsistent with Delaware public policy in that it would be unfair to enforce the Bylaw against Plaintiff and the putative class because it was adopted after the Reverse Stock Split had been implemented.

Defendants raise essentially three points in opposition. First, they argue that "by becoming a stockholder of a Delaware corporation, [Plaintiff] implicitly consented to the board's authority to unilaterally amend [the Company's] bylaws at any time," meaning that applying the Bylaw in this case would not be inconsistent with Delaware contract law.[24] Second, Defendants assert that, under the DGCL and Delaware corporate law, the Board had the authority to amend the Company's bylaws "and apply them against stockholders . . . , even where doing so, as here, may impact pre-amendment conduct."[25] Thus, according to Defendants, Plaintiff's argument about "former" stockholders is nothing more than a veiled attempt to resurrect the vested rights doctrine that Delaware courts long ago rejected. Finally, they contend that applying the Bylaw is not contrary to public policy because, even though the Bylaw governs claims that accrued before its adoption, it would be applied here to a case filed after its adoption.

### C. Plaintiff is Entitled to Judgment on the Pleadings Because the Board Adopted the Bylaw after the Reverse Stock Split

As explained above, the narrow question before the Court is whether, as a matter of law, the Bylaw applies to Plaintiff's lawsuit given that it was adopted after the Reverse Stock Split had been consummated. Neither side has identified any controlling

---

[24] Defs.' Ans. Br. 13-14.

[25] *Id.* 8-9.

10

precedent, and both Plaintiff and Defendants describe this issue as one of first impression.[26] In my opinion, the Bylaw does not apply here for two related reasons: (i) the Board adopted the Bylaw after Plaintiff's interest in the Company was eliminated in the Reverse Stock Split; and (ii) Delaware law does not authorize a bylaw that regulates the rights or powers of former stockholders who were no longer stockholders when the bylaw was adopted.

"Corporate charters and bylaws are contracts among a corporation's shareholders[.]"[27] "[T]he rules that govern the interpretation of statutes, contracts, and other written instruments apply to the interpretation of corporate charters and bylaws."[28] "The bylaws of a corporation are presumed to be valid, and the courts will construe the bylaws in a manner consistent with the law rather than strike down the bylaws."[29]

My analysis of whether the Bylaw applies in this action begins with two provisions of the DGCL: 8 *Del. C.* §§ 109(a) and 109(b). Section 109(a) permits a corporation's charter to "confer the power to adopt, amend or repeal bylaws upon the

---

[26] Tr. of Oral Arg. 9-10, 20.

[27] *Airgas, Inc. v. Air Prods. & Chems., Inc.*, 8 A.3d 1182, 1188 (Del. 2010).

[28] *Sassano v. CIBC World Mkts. Corp.*, 948 A.2d 453, 462 (Del. Ch. 2008).

[29] *Frantz Mfg. Co. v. EAC Indus.*, 501 A.2d 401, 407 (Del. 1985) (citing 8 W. Fletcher, *Cyclopedia of the Law of Corporations* § 4184 (rev. perm. ed. 1982)).

11

directors."[30]  Section 109(b) sets forth the universe of matters that may be regulated in a corporation's bylaws:

> The bylaws may contain any provision, not inconsistent with law or with the certificate of incorporation, relating to the business of the corporation, the conduct of its affairs, and its rights or powers or the rights or powers of its stockholders, directors, officers or employees.

The relevant language of those statutes here is that, under Section 109(b), First Aviation's bylaws "may contain any provision, not inconsistent with law . . . , relating to . . . the rights or powers of its stockholders."

A fundamental principle of Delaware contract law is that "only parties to a contract are bound by that contract."[31]  In his opinion in *Boilermakers Local 154 Retirement Fund v. Chevron Corp.*[32] upholding the facial validity of a forum selection bylaw, then-Chancellor Strine observed that, for a corporation whose charter authorizes the board to amend its bylaws unilaterally, those bylaws are, in effect, an "inherently

---

[30] Defendants represented that First Aviation's charter has such a provision, Defs.' Ans. Br. 1, but they did not provide the Company's charter to the Court.  Instead, Defendants submitted the Company's bylaws, which provide that the Board may adopt bylaws.  Defs.' Ex. B (Section VII.6.).  Because Plaintiff did not contest this point, I assume that First Aviation's charter has a provision authorizing the Board to adopt bylaws.  Without such a provision, the Board plainly would not have had the authority to adopt the Bylaw. *See Lions Gate Entm't Corp. v. Image Entm't Inc.*, 2006 WL 1668051, at *7 (Del. Ch. June 5, 2006) ("In the absence of a provision in the certificate of incorporation conferring power upon the directors to adopt, amend or repeal bylaws, a bylaw cannot confer this power on the board of directors." (citing 8 *Del. C.* § 109)).

[31] *Am. Legacy Found. v. Lorillard Tobacco Co.*, 831 A.2d 335, 343 (Del. Ch. 2003) (citing, *inter alia*, *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a non-party.")).

[32] 73 A.3d 934 (Del. Ch. 2013).

12

flexible" contract between the corporation and its stockholders.[33]  As explained in *Chevron*, "an essential part of the contract stockholders assent to when they buy stock in [a corporation whose charter authorizes directors to adopt bylaws unilaterally] is one that presupposes the board's authority to adopt binding bylaws consistent with 8 *Del. C.* § 109."[34]  The logical and implicit corollary of *Chevron* is that a stockholder whose equity interest in the corporation is eliminated in a cash-out transaction is, after the effective time of that transaction, no longer a party to that flexible contract.  Instead, a stockholder whose equity interest is eliminated is equivalent to a non-party to the corporate contract, meaning that a former stockholder is not subject to, or bound by, any bylaw amendments adopted *after* one's interest in the corporation has been eliminated.

This conclusion does not mean that a stockholder whose interest is eliminated is no longer subject to any of the corporation's bylaws.  One of the plaintiffs' arguments in *Chevron* was that the language of the forum selection bylaws at issue would have regulated where former stockholders—such as those cashed out in a short-form merger pursuant to 8 *Del. C.* § 253—could sue the directors for breach of fiduciary duty regarding the cash-out transaction.  For this reason, the plaintiffs argued that the forum selection bylaws violated Section 109(b), which does not expressly authorize bylaws that regulate the rights or powers of "former" stockholders.

---

[33] *See id.* at 957.

[34] *Id.* at 940.

13

Then-Chancellor Strine rejected this hypothetical, "as-applied" challenge and the broader framework of Delaware law it implied. Specifically, he postulated in dicta that "it is not the case that a bylaw *in effect at the time that a stockholder's internal affairs claim arose* cannot bind that stockholder simply because the transaction she is challenging resulted in her no longer being a stockholder."[35] Instead, the bylaws in effect at the effective time of a cash-out transaction would continue to bind a stockholder who challenges that transaction post-closing "because her right to sue continues to be based on her status as a stockholder."[36]

Delaware law permits former stockholders to challenge the fairness of a transaction by which their equity interests in the corporation are cashed out,[37] such as Plaintiff's action here. In determining the bylaw provisions that should apply to a lawsuit initiated by a former stockholder challenging the terms of a cash-out transaction, I hold that the governing bylaws are those in effect when the former stockholder's interest as a stockholder was eliminated. After that date, a former stockholder is no longer a party to the corporate contract and thus not subject to any bylaw amendments occurring after his or her interest as a stockholder was eliminated.

---

[35] *Id.* at 952 n.80.

[36] *Id.* (emphasis added).

[37] *See, e.g.*, *Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 354 (Del. 1988) ("[D]irect attacks against a given corporate transaction (attacks involving fair dealing or fair price) give complaining shareholders standing to pursue individual actions even after they are cashed-out through the effectuation of a merger." (citing *Cede & Co. v. Technicolor, Inc.*, 542 A.2d 1182, 1188 (Del. 1988)).

14

Here, the Bylaw was adopted on June 3, 2014, *after* the Reverse Stock Split was consummated on May 30, 2014. Thus, applying the analysis set forth above, the Bylaw cannot apply to Plaintiff, who was no longer a stockholder of the Company when the Bylaw was adopted, or to this action. In my opinion, it is immaterial that the Board adopted the Bylaw before Plaintiff filed suit on June 14, 2014, because that later development does not alter the key chronology at issue: the Bylaw was adopted after the Plaintiff had been cashed out as a result of the Reverse Stock Split.

Defendants cite *Aveta Inc. v. Cavallieri*[38] for the proposition that Plaintiff should be estopped from asserting that he is not subject to the Bylaw. In *Aveta*, the Court held that "[a] non-signatory to a contract will be estopped from arguing that a dispute-resolution provision does not apply when the non-signatory 'consistently maintain[s] that other provisions of the same contract should be enforced to benefit him.' "[39] The estoppel principle outlined in *Aveta* is inapposite here because Plaintiff is not picking and choosing which bylaws of the Company apply to him or this action. Rather, Plaintiff's interest as a former stockholder of the Company remains subject to all the Company's bylaws as of the effective time of the Reverse Stock Split—which did not include the

---

[38] 23 A.3d 157 (Del. Ch. 2010).

[39] *Id.* at 182 (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resign Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir. 2001)).

Bylaw. Thus, I conclude based on principles of contract law that the Bylaw does not apply in this case.[40]

Additionally, in my view, the fact that the Board maintained the authority under Section 109(a) of the DGCL to amend the Company's bylaws after the Reverse Stock Split was implemented does not undermine this conclusion. The word "stockholders" as it is used in Section 109(b) of the DGCL authorizing bylaws that regulate the "rights or powers of . . . stockholders" is fairly susceptible to only one interpretation:[41] the holders of the corporation's stock at or after the time a bylaw is adopted. In other words, the DGCL does not authorize the adoption of bylaws that purport to regulate the rights or powers of former investors who no longer hold the corporation's stock. Under general contract law principles, I concluded above that the bylaws in effect at the time of a cash-out transaction continue to apply to the interests of a cashed-out, former stockholder who challenges the fairness of that transaction. But, in my view, a bylaw amendment that purports to regulate the rights or powers of former stockholders who were no longer

---

[40] I need not address Defendants' speculation that my conclusion might create "multiple sets of bylaws" to be applied within one class action. Defs.' Ans. Br. 1. The putative class of First Aviation stockholders consists only of those who shared the experience of being frozen out by the Reverse Stock Split. Am. Compl. ¶ 24. In any event, the appropriate time to address challenges to the definition of the class is at class certification, not now.

[41] *See In re Kraftt-Murphy Co., Inc.*, 82 A.3d 696, 702 (Del. 2013) ("[A] statute is ambiguous only if it is reasonably susceptible of different interpretations[.]").

stockholders when the bylaw was adopted is beyond the scope of Section 109(b) and, therefore, inconsistent with Delaware law.[42]

Other provisions of the DGCL support this interpretation of the implicit limitations of Section 109(b). For example, under 8 *Del. C.* § 220, a "stockholder" of a Delaware corporation may initiate an action in this Court to obtain books and records of the corporation.[43] Section 220(a)(1) defines "stockholder," as used in that section, as "a holder of record of stock in a stock corporation, or a person who is the beneficial owner of shares of such stock held either in a voting trust or by a nominee on behalf of such person."[44] The plain language of Section 220, like that of Section 109(b), contemplates that the term "stockholder" refers to *current* stockholders, not to former stockholders who no longer have an equity interest in the corporation.

Conversely, Section 109(b) is in stark contrast to the language of 8 *Del. C.* § 145, which mandates indemnification of "a present *or former* director"[45] who is successful in the defense of a legal proceeding initiated against that person "by reason of the fact that

---

[42] An equivalent limitation would apply to charter provisions. The DGCL provides that a charter may contain "any provision creating, defining, limiting and regulating the powers of . . . the *stockholders*, or any class of the stockholders . . . ; if such provisions are not contrary to the laws of this State." 8 *Del. C.* § 102(b)(1) (emphasis added). Nothing in Section 102(b)(1) authorizes a charter provision regulating the powers of former investors who were no longer stockholders when the provision was adopted.

[43] 8 *Del. C.* § 220(c).

[44] 8 *Del. C.* § 220(a)(1).

[45] 8 *Del. C.* § 145(c) (emphasis added).

17

the person is *or was* a director" of the corporation.[46]  As Section 145 demonstrates, the

General Assembly knows how to refer to the rights or powers of former corporate actors,

but the General Assembly elected not to do so in Section 109(b) with respect to the rights

and powers of investors whose equity interests in the corporation have been eliminated.

In my opinion, to interpret "stockholders" in Section 109(b) to permit a corporation to

enforce a bylaw against a former stockholder who was not a stockholder when that bylaw

was adopted would be the equivalent of reading "or former" and "or was" out of Section

145, contrary to basic principles of statutory construction.[47]  The only reasonable

interpretation of Section 109(b), in my view, is that it does not permit Defendants to

apply the Bylaw against Plaintiff, who was no longer a stockholder of the Company when

the Board adopted the Bylaw.

In support of their position, Defendants rely on the Delaware Supreme Court's

decisions in *ATP* and *United Technologies Corp. v. Treppel*,[48] as well as this Court's

decisions in *Chevron* and *City of Providence v. First Citizens BancShares, Inc.*[49]  None of

these cases controls here because none of them addressed whether a bylaw adopted *after*

---

[46] 8 *Del. C.* § 145(a) (emphasis added).

[47] *See Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 900 (Del. 1994) ("[W]ords in a statute should not be construed as surplusage if there is a reasonable construction which will give them meaning.").

[48] -- A.3d --, 2014 WL 7662608 (Del. Dec. 23, 2014).

[49] 99 A.3d 229 (Del. Ch. 2014).

a stockholder's interest has been eliminated applies in a lawsuit initiated by that former stockholder.[50]

For example, in *ATP*, which Defendants advance as their strongest authority, the Delaware Supreme Court addressed several certified questions of law as to whether a non-stock member corporation had the authority under the DGCL to adopt a non-reciprocal fee-shifting bylaw. The corporation was trying to enforce that bylaw in a federal lawsuit filed by current members. Among other conclusions, the Supreme Court held that, generally, under Delaware law, "a bylaw amendment is enforceable against members who join the corporation before its enactment."[51] Although the *ATP* bylaw purported to apply to any claim filed against the corporation by any "current *or prior* member,"[52] the Supreme Court's decision cannot responsibly be read to hold that Section 109(b) permits a bylaw that regulates the rights or powers of members who were no longer stockholders when that bylaw was adopted. Indeed, given that the underlying

---

[50] Defendants' other authority, *Underbrink v. Warrior Energy Services Corp.*, 2008 WL 2262316 (Del. Ch. May 30, 2008), is inapplicable for a different reason. In *Underbrink*, the Court concluded after trial that the facts surrounding the board's adoption of a bylaw providing for mandatory retroactive advancement of legal fees and expenses did not render that bylaw unreasonable or unenforceable. *See id.* at *13. *Underbrink* is inapposite because that bylaw addressed an entirely different subject matter (advancement) and because that bylaw, as authorized by Section 145 of the DGCL, expressly provided that the corporation was obligated to advance legal fees and expenses to an individual "who has ceased to be a director[.]" *Id.* at *7.

[51] *ATP*, 91 A.3d at 560.

[52] *Id.* at 556 (emphasis added).

litigation in federal court was filed by then-current members, this type of as-applied challenge was never presented in *ATP*.

Similarly, the challenges to forum selection bylaws in *Chevron* and *First Citizens* were not initiated by former stockholders, and neither case considered the application of a bylaw adopted after a stockholder's interest had been eliminated. Rather, the plaintiffs in both cases were stockholders of their respective corporations when the boards unilaterally adopted the forum selection bylaws, when they filed suit, and when this Court issued those decisions.

Finally, *United Technologies* concerned a Section 220 action filed by a current stockholder of a Delaware corporation. There, the Delaware Supreme Court reiterated the holding of *Chevron* that where a corporation's governing documents allow directors to amend the bylaws unilaterally, the rights or powers of a stockholder may be regulated by a bylaw (such as a forum selection bylaw) that is adopted by the board after the investor first became a stockholder.[53] The Supreme Court in *United Technologies* did not discuss the issue here: the application of a bylaw adopted after a stockholder's interest in the corporation had been eliminated.

Contrary to Defendants' protestations, my conclusion does not resurrect or tacitly endorse the vested rights doctrine. The vested rights doctrine is the theory that a stockholder has a vested right to proceed under the bylaws in effect when the stockholder

---

[53] *See United Techs.*, 2014 WL 7662608, at *6 ("Treppel's argument that United Technologies' forum selection bylaw did not apply to him because it was adopted after he bought his shares is inconsistent with the plain operation of the DGCL." (citing *Chevron*, 73 A.3d at 955-56)).

acted in reliance on them, even if the board subsequently exercised its authority to unilaterally amend the bylaws in a manner detrimental to that stockholder. In *Kidsco, Inc. v. Dinsmore*,[54] the Court rejected the vested rights doctrine, concluding that, "where a corporation's by-laws put all on notice that the by-laws may be amended at any time, no vested rights can arise that would contractually prohibit an amendment."[55] Delaware courts have repeatedly cited *Kidsco* for this proposition.[56]

In my view, nothing in this opinion alters that settled law because this case does not implicate the traditional vested rights doctrine. Plaintiff is not arguing—nor could he under *Kidsco* and its progeny—that the Bylaw is inapplicable to his lawsuit because he acted in detrimental reliance on the Company's bylaws in effect before the Bylaw was adopted. Instead, Plaintiff contends that the Bylaw is inapplicable here under contract law and the DGCL because the Bylaw was adopted after he was no longer a stockholder of the Company.[57] For the reasons set forth above, I agree.

In sum, the Bylaw does not apply here because the Bylaw was adopted after Plaintiff's equity interest in the Company was eliminated. Additionally, the Bylaw does not apply here because Section 109(b) of the DGCL does not authorize a bylaw that

---

[54] 674 A.2d 483 (Del. Ch. 1995), *aff'd*, 670 A.2d 1338 (Del. 1995) (ORDER).

[55] *Id.* at 492 (citing *Roven v. Cotter*, 547 A.2d 603, 608 (Del. Ch. 1988)).

[56] *See, e.g.*, *United Techs.*, 2014 WL 7662608, at *6; *ATP*, 91 A.3d at 560; *First Citizens*, 99 A.3d at 241; *Chevron*, 73 A.3d at 940, 955-56.

[57] Pl.'s Reply Br. 6-7, 15-16.

regulates the rights or powers of a stockholder whose equity interest in the corporation had been eliminated before the bylaw was adopted.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial judgment on the pleadings is GRANTED.[58]

**IT IS SO ORDERED**.

---

[58] Because the Bylaw does not apply to this lawsuit for the reasons stated above, Counts III-V of the Amended Complaint challenging the validity of the Bylaw are moot.