# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RAINBOW MOUNTAIN, INC., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | C.A. No. 10221-VCMR |
| v. | ) ) | |
| TERRY BEGEMAN, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: December 23, 2016
Date Decided: March 23, 2017

Brian T.N. Jordan, JORDAN LAW, LLC, Wilmington, Delaware; *Attorney for Plaintiff Rainbow Mountain, Inc.*

Terry Begeman, Montebello, Virginia; *Pro se Defendant.*

**MONTGOMERY-REEVES, Vice Chancellor.**

This action arises from a dispute among the members of Rainbow Mountain, Inc., a Delaware nonstock corporation, ("Rainbow Mountain"). Plaintiff Rainbow Mountain seeks a declaratory judgment that Defendant Terry Begeman was effectively removed as a director, officer, and member of the corporation and as a result has no right to occupy land owned by Rainbow Mountain. Terry,[1] as Counterclaim Plaintiff, seeks a declaratory judgment that he remains a member, director, and officer of Rainbow Mountain and is entitled to continue to occupy Rainbow Mountain's land. Both parties in this case have moved for summary judgment and have stipulated to a decision on the paper record. I hold that Terry was not properly removed as a director in 2008 or as a member in 2009, but Terry was effectively removed as Secretary of Rainbow Mountain in 2009. As a member of Rainbow Mountain, Terry is entitled to continue to live on Rainbow Mountain's real property under the Rainbow Mountain bylaws.

## I.  BACKGROUND

The facts in this opinion derive from the documents that the parties have submitted with their pleadings and briefs in this case. Both parties have moved for summary judgment and have stipulated to a decision on the paper record.[2]

---

[1]  This memorandum opinion refers to the relevant individuals by first name because many of them share the same last names. No familiarity or disrespect is intended.

[2]  Letter from Brian Jordan, Esquire, to the Court, *Rainbow Mountain, Inc. v. Begeman*, C.A. No. 10221-VCMR (Del. Ch. Nov. 29, 2016).

## A. Parties

Rainbow Mountain owns approximately 97 acres of land in Virginia. Sheridan and Barbara formed Rainbow Mountain, and they and their natural children were the original members of the corporation.

Terry is one of Sheridan and Barbara's six children. He currently lives in a cabin on the land owned by Rainbow Mountain. Before the events that gave rise to this litigation, Terry was a director, a member, a Senior Vice-President, and the Secretary of Rainbow Mountain.

Mark Begeman, Laurie Larimar, Cindy Dallwig, Jeffrey Begeman, and Todd Begeman are Terry's five siblings. Susan Begeman, Roger Dallwig, and Bonnie Begeman are Terry's siblings-in-law. Jason Begeman, Melanie Ketchum, and Justin Begeman are Terry's niece and nephews. Eric Ketchum is Melanie's husband.

## B. Facts

### 1. The Rainbow Mountain bylaws

Both parties have submitted a set of bylaws of Rainbow Mountain that was originally adopted on February 10, 2003 (the "2003 Bylaws").[3] Plaintiff and

---

[3] Pl.'s Mot. for Summ. J. Ex. A; First Am. Answer & Countercl. Ex. T.

Defendant also have submitted another version of the bylaws that first appears in the record in a 2005 Rainbow Mountain resolution (the "2005 Bylaws").[4]

On January 21, 2003, Thomas W. Aldous of the law firm Skeen & Zobrist sent Terry a letter attaching the 2003 Bylaws for him to send to the members of Rainbow Mountain.[5] By February 10, 2003, six of the ten individuals thought to be members of Rainbow Mountain on that date[6] had signed a written consent of members adopting the 2003 Bylaws.[7]

On July 29, 2004, Judge J. Michael Gamble of the Twenty-Fourth Judicial Circuit of Virginia published an opinion in a case arising out of Sheridan's attempt to transfer Rainbow Mountain's real property to himself (the "Virginia Litigation").[8]

---

[4] Compl. Ex. A; First Am. Answer & Countercl. Ex. V. The version of the 2005 Bylaws that Rainbow Mountain submitted as Exhibit A to the Complaint is formatted differently from the version of the 2005 Bylaws that Terry submitted as Exhibit V to the First Amended Answer and Counterclaim, but the substance is the same.

[5] First Am. Answer & Countercl. Ex. T.

[6] The written consent adopted on February 10, 2003, lists the current members of Rainbow Mountain as Sheridan, Jeffrey, Susan, Cindy, Roger, Todd, Bonnie, Laurie, Terry, and Mark. Jeffrey, Susan, Todd, Bonnie, Laurie, and Terry signed the written consent.

[7] First Am. Answer & Countercl. Ex. U.

[8] Terry seems to suggest that the Virginia court may not have had jurisdiction to decide the questions resolved in the July 29, 2004 opinion because in 2011, a Virginia court held that it did not have jurisdiction to decide the membership of Rainbow Mountain. In the interest of comity among the states and without full

3

Judge Gamble held that Rainbow Mountain had no written bylaws and rather had bylaws only by custom, acquiescence, and course of conduct. Judge Gamble found that the members acquiesced in a procedure under which Barbara made all decisions for the corporation and appointed directors, officers, and members. Further, Judge Gamble held that the members of Rainbow Mountain were Sheridan, Barbara, and their six children.[9] Barbara passed away before the Virginia Litigation began,[10] and Sheridan died during it.[11] Thus, when Judge Gamble's opinion was issued, the surviving members of Rainbow Mountain were Mark, Laurie, Cindy, Jeffrey, Todd, and Terry.

On July 7, 2005,[12] Laurie, Jeffrey, Todd, and Terry signed and delivered a written consent in lieu of an annual meeting of members, (1) recognizing the six members as determined by the July 29, 2004, Virginia court order, (2) electing as

---

briefing on this issue, however, I consider the Virginia court's July 29, 2004 opinion as preclusive on the issue of membership in Rainbow Mountain as of that date.

[9] First Am. Answer & Countercl. Ex. K, at 3.

[10] *Id.*

[11] Oral Arg. Tr. 25.

[12] Throughout this opinion, the dates on which written consents are found to be signed and delivered are the dates that the last signatory signed and delivered the written consent. All members signing written consents upon which this opinion relies signed and delivered within 60 days of the earliest dated consent that was delivered, as required by the Rainbow Mountain bylaws and the Delaware General Corporation Law. 8 *Del. C.* § 228(c); 2003 Bylaws art. III, ¶ 4.

4

directors Jeffrey, Susan, Jason, Melanie, Todd, Bonnie, Justin, Laurie, and Terry, and (3) adopting a set of bylaws.[13] The July 7, 2005 written consent of members stated, in part, as follows:

> [T]he Bylaws for the regulation of the affairs of the Corporation, a copy of which is attached hereto as Exhibit F and incorporated herein by reference, are hereby approved and adopted and ordered to be filed in the minute book of the Corporation to be effective immediately, and all previous bylaws are hereby superceded [sic], effective immediately.[14]

The record does not indicate which version of the bylaws was attached as "Exhibit F" to the July 7, 2005 written consent. Terry stated at oral argument that the 2003 Bylaws have been the operative bylaws since they were ratified in the July 7, 2005 written consent of members.[15] Rainbow Mountain appears to agree because it cites to and includes as an exhibit to its opening summary judgment brief the 2003 Bylaws.[16] Rainbow Mountain does not offer any proof or argue that the 2005 Bylaws were ratified in the July 7, 2005 written consent or were adopted at any time thereafter. Instead, Rainbow Mountain argues that "there is no material difference

---

[13] First Am. Answer & Countercl. Ex. S.

[14] *Id.* Ex. S, at 4.

[15] Oral Arg. Tr. 46; *see also* First Am. Answer & Countercl. 85, Ex. T.

[16] Pl.'s Mot. for Summ. J. Ex. A.

5

on the Articles in question between the 2003 and 2005 bylaws."[17]  Absent any evidence or argument in the record to rebut Terry's assertion that the 2003 Bylaws remain the operative bylaws, I find that the 2003 Bylaws were ratified in the July 7, 2005 written consent of members and have been the operative Rainbow Mountain bylaws since July 7, 2005.

Under the 2003 Bylaws, Rainbow Mountain has three classes of members, each with different conditions of membership.  The conditions of membership for Regular Members (also referred to as "Class A" members) are as follows:

> Any individual who is a descendant of both Sheridan Begeman and Barbara Begeman and who is age 35 or older is eligible to be a Regular Member.  Any individual who is legally and lawfully wedded to a descendant of both Sheridan Begeman and Barbara Begeman, who is not legally separated from such descendant, and who is age 35 or older is eligible to be a Regular Member.  Any Associate Member who is 18 years of age or older and whose primary residence has been on the property of the Corporation for a period of six months immediately prior thereto is eligible to be a Regular Member.[18]

The 2003 Bylaws further provide that "[a]ny individual eligible to be a Regular Member shall automatically become a Member of Class A upon delivery of a signed written notice to the Secretary of the Corporation . . . ."[19]  The conditions of

---

[17]     Pl.'s Reply Br. 2.

[18]     2003 Bylaws art. II, ¶ 1(A).

[19]     *Id.* art. II, ¶ 2(A).

membership for Associate Members (also referred to as "Class B" members) are as follows:

> Any individual who is a descendant of Sheridan Begeman and Barbara Begeman is eligible to be an Associate Member. Any individual who is legally and lawfully wedded to a descendant of both Sheridan Begeman and Barbara Begeman and who is not legally separated from such descendant is eligible to be an Associate Member.[20]

The bylaws further provide that "[a]ny individual eligible to be an Associate Member shall automatically become a Member of Class B upon delivery of a signed written notice to the Secretary of the Corporation . . . ."[21] Finally, "[a]ny individual is eligible to be an Honorary Member"[22] (also referred to as a "Class C" member). In order to become an Honorary Member, an individual must:

> submit a written and signed application, on a form approved by the Board of Directors, to the Secretary of the Corporation. Such application shall be signed by two Members of any Class in good standing who support such individual's election as an Honorary Member. Each application shall be considered by the Board of Directors at its next regular or special meeting and shall be approved or disapproved by 75% or more of the Board of Directors that attend such meeting so long as a quorum is present.[23]

---

[20] *Id.* art. II, ¶ 1(B).

[21] *Id.* art. II, ¶ 2(B).

[22] *Id.* art. II, ¶ 1(C).

[23] *Id.* art. II, ¶ 2(C).

Regular Members of Rainbow Mountain are entitled to "participate in and to vote at all meetings of Members."[24] Further, among other rights, they are entitled to "live on the grounds of Rainbow Mountain Incorporated with their spouse and children . . . ."[25] Associate Members "shall have the same privileges as Regular Members, but shall not have the right to vote on matters presented for a vote at meetings of Members."[26] Honorary Members do not have voting rights or the right to live on the Rainbow Mountain property by default. But "[t]he Board of Directors may grant to any one or all of the Honorary Members such other duties and privileges, including voting privileges, as 75% or more of the Full Board of Directors may determine."[27] The record does not show whether anyone ever submitted a written notice to the Secretary of Rainbow Mountain as the bylaws require in order to become a member.

Under paragraph 4 of article II of the 2003 Bylaws, Regular Members and Associate Members also have the right to request in writing from the board of directors an unassignable, irrevocable lifetime license to occupy no more than five

---

[24] *Id.* art. II, ¶ 3(A).

[25] *Id.*

[26] *Id.* art. II, ¶ 3(B).

[27] *Id.* art. II, ¶ 3(C).

acres of Rainbow Mountain land.[28]  Under the terms of such a license, a member would be entitled to exclude others from the designated portion of Rainbow Mountain's land and make improvements on the land.  The record does not indicate that any Rainbow Mountain members ever followed the article II, paragraph 4 procedure to obtain such a license, and Terry argues that while licenses were never formally granted under the bylaws, they were informally granted.[29]  Regardless, certain Rainbow Mountain members did occupy parts of the Rainbow Mountain land.[30]

The 2003 Bylaws provide for the removal of members as follows:

> Membership in the Corporation, and all rights and licenses incident thereto, may be terminated for cause.  The Board of Directors shall hold a hearing and the Member shall be given no less than 5 days written notice of such hearing.  The Board of Directors shall prescribe rules and procedures for the hearing consistent herewith.  The Member shall have the opportunity to be heard at such meeting.  The Member may be expelled only by a vote of expulsion by 2/3 or more of the Full Board of Directors.[31]

The 2003 Bylaws also provide that directors may be removed with or without cause by a majority of the members.

---

[28]     *Id.* art. II, ¶ 4(B).

[29]     Additional Submission in Supp. of Def.'s Mot. for Summ. J. 22.

[30]     *Id.* at 23.

[31]     2003 Bylaws art. IX, ¶ 2.

Any or all of the directors may be removed with or without cause, at any time, by the majority vote of the Regular Members at a special meeting called for that purpose. Such removal may be accomplished with or without cause, but the director involved shall be given an opportunity to be present and to be heard at the meeting at which his or her removal is considered.[32]

The 2003 Bylaws define "Cause" as follows:

The term "Cause" shall mean a Member's or director's (i) continued participation in activity in material conflict with the Corporation's interests but only after written notice to the Member or director from the Corporation and the Member's or director's failure to discontinue participation in activity in material conflict with the Corporation's interests within 30 days after receipt of said notice; (ii) conviction of a felony; (iii) fraud, misrepresentation, embezzlement or similar acts of dishonesty; (iv) habitual drunkenness; (v) habitual use of prescription medication beyond that which is prescribed by Member's or director's physician or Member's or director's use of an illegal drug; (vi) intentional or willful misconduct that may subject the Corporation to criminal or civil liabilities; or (vii) willful violation of or substantial failure to comply with the Certificate of Incorporation, bylaws, or the duly promulgated rules and regulations of the Corporation respecting Membership rights and duties but only after written notice to the Member or director from the Corporation and the Member's or director's failure to correct said violation or failure within 30 days after receipt of said notice.[33]

---

[32]     *Id.* art. V, ¶ 14.

[33]     *Id.* art. X, ¶ 12(A).

10

In the case of a vacancy on the Rainbow Mountain board, the 2003 Bylaws provide as follows:

> Any vacancy occurring in the Board of Directors shall be filled by a majority of all of the remaining directors— though less than a quorum—or by a sole remaining director. A director appointed to fill a vacancy shall serve for the unexpired term of his or her predecessor in office. Notwithstanding the foregoing, the Members who are entitled to elect a director, who has vacated his or her position, may elect a successor to fill such vacancy for the unexpired term and such election shall take precedence over the appointment of a director by the Board of Directors. A reduction in the authorized number of directors shall not remove any director from office prior to the expiration of his or her term of office.[34]

The 2003 Bylaws provide that the board of directors may appoint officers for Rainbow Mountain as follows:

> The officers . . . shall be a president, a secretary, and a treasurer. The Board of Directors may also choose one or more vice presidents (any one or more of whom may be designated executive vice president or senior vice president), one or more assistant secretaries and assistant treasurers, as well as other officers and agents, with such titles, duties, and powers as the Board of Directors may from time to time determine.[35]

The 2003 Bylaws provide that only the board of directors may remove officers as follows:

---

[34] *Id.* art. V, ¶ 6.

[35] *Id.* art. VI, ¶ 1.

> Each officer of the Corporation shall hold office until his or her successor is chosen and qualified or until he or she dies, resigns or is removed. Any officer may be removed at any time by the affirmative vote of a majority of the Board of Directors whenever in its judgment the best interests of the Corporation would be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the officer so removed. Any vacancy occurring in any office of the Corporation shall be filled by the Board of Directors for the unexpired portion of the term. Only the Board of Directors may remove an officer from his or her office.[36]

Finally, the 2003 Bylaws also establish a quorum for member meetings. The bylaws state that "[m]embers holding more than 50% of the votes that may be cast at any meeting shall constitute a quorum at a meeting of Members."[37]

### 2. Removal of Mark and Cindy as members

On September 21, 2005, the directors of Rainbow Mountain that were elected in the July 7, 2005 written consent signed a unanimous written consent terminating Mark and Cindy's memberships[38] in Rainbow Mountain without cause.[39] The

---

[36]   *Id.* art. VI, ¶ 4.

[37]   *Id.* art. III, ¶ 5.

[38]   This opinion refers to memberships in Rainbow Mountain, Inc. But no inference should be drawn from those references that Rainbow Mountain is a nonprofit nonstock corporation. I need not and do not decide for purposes of this opinion whether Rainbow Mountain is a nonprofit nonstock corporation, which has memberships, or any other nonstock corporation, which has membership interests. *See* 8 *Del. C.* § 114.

[39]   First Am. Answer & Countercl. Ex. W.

written consent purported to remove Mark and Cindy as members without cause through the following resolutions:

> [A] motion is hereby brought before the Full Board of Directors to provoke [sic] Article IX(2) of the Corporation's Bylaws in order to terminate the membership(s) of the following individuals:
>
> Mark Begeman
>
> Cindy Dallwig
>
> . . . Mark Begeman and Cindy Begeman [sic] have 30 days from [the date the written consent is delivered to the corporation's secretary] . . . to permanently vacate the premises and all corporate property and to remove all their personal belongings thereof [sic].[40]

A footnote in the September 21, 2005 written consent of directors quotes the bylaws of Rainbow Mountain as stating "[m]embership in the Corporation, and all rights and licenses incident thereto, may be terminated by the Board of Directors at any time without cause."[41]  There is no evidence in the record, however, of an amendment to the bylaws to allow members to be removed without cause.[42]  The footnote in question merely quotes the 2005 Bylaws as if they have already been

---

[40]     *Id.* Ex. W, at 2-3.

[41]     *Id.* Ex. W, at 2 n.2.

[42]     Terry argues that a bylaw allowing members to be removed without cause is invalid. But because neither party argues that the 2005 Bylaws, which allow for members to be removed without cause, are operative, I need not and do not address the validity of any provision in the 2005 Bylaws.

13

adopted. As discussed above, absent any evidence or argument that bylaws other than the 2003 Bylaws should apply, I find that the 2003 Bylaws are the operative Rainbow Mountain bylaws, and footnote 2 in the September 21, 2005 written consent of directors misquotes the bylaws.

The September 21, 2005 written consent also added five new Rainbow Mountain Regular Members. The written consent contained a resolution that:

> [H]aving qualified for membership, the following persons be, and hereby are, elected to serve as Class A Members of the Corporation:
>
> Susan Begeman
>
> Jason Begeman
>
> Melanie Ketchum
>
> Bonnie Begeman
>
> Justin Begeman[43]

Terry challenges whether the Regular Members added in the September 21, 2005 written consent had satisfied the conditions of membership to become Regular Members. But nothing in the record indicates that Susan, Jason, Melanie, Bonnie, or Justin received notice of this litigation, or were given an opportunity to defend their status as Rainbow Mountain members. Regardless, whether Susan, Jason, Melanie, Bonnie, and Justin are members of Rainbow Mountain does not affect the

---

[43] First Am. Answer & Countercl. Ex. W, at 4.

14

outcome of this case. Thus, this Court expresses no opinion on whether Susan, Jason, Melanie, Bonnie, or Justin are Rainbow Mountain members. Instead, this opinion assumes that they are members and explains that the results of the relevant Regular Member votes would be the same regardless of whether Susan, Jason, Melanie, Bonnie, and Justin are actually Regular Members.

On June 22, 2010, Cindy, her husband Roger, and Mark signed an affidavit that was submitted to the Nelson Circuit Court in Virginia presumably in connection with litigation in that court, declaring that "should Rainbow Mountain Incorporated still qualify as a non-profit corporation set up to do business in the Commonwealth of Virginia; let the record show that Cindy Dallwig, Roger Dallwig, and Mark Begeman, wish the court to recognize their ongoing interest in membership of said corporation."[44] No evidence suggests that Cindy, Roger, or Mark have disavowed this affidavit since 2010.

### 3. Removal of Terry as a director, officer, and member

Since 2005, relations among the members of Rainbow Mountain have soured, and on November 15, 2008, at a Rainbow Mountain members meeting, the Regular Members voted to remove Terry from the Rainbow Mountain board of directors

---

[44] Def.'s Letter to the Ct. Ex. CC, *Rainbow Mountain, Inc. v. Begeman*, C.A. No. 10221-VCMR (Del. Ch. Oct. 18, 2016).

without cause.[45]   The meeting minutes list nine Regular Members: Laurie, Jeffrey, Susan, Jason, Melanie, Terry, Todd, Bonnie, and Justin.  Only Laurie, Jeffrey, Susan, Jason, and Melanie were present, and they all voted to remove Terry from the board.[46]  The members present at the November 15, 2008 meeting also purported to amend portions of the Rainbow Mountain bylaws.

On April 29, 2009, at 7:34 p.m., the members of Rainbow Mountain held another meeting at which the Regular Members voted to elect Eric to fill the vacancy left by Terry's removal from the board.[47]  The members present at that meeting were the same members present at the November 15, 2008 meeting—namely, Laurie, Jeffrey, Susan, Jason, and Melanie—plus Eric.  The record does not reflect when or if Eric became a member of Rainbow Mountain.  At the 7:34 p.m. meeting, Laurie, Jeffrey, Susan, Jason, and Melanie voted to elect Eric to fill the vacancy on the board. Eric did not vote.

Immediately after the members meeting, the purported Rainbow Mountain directors met on April 29, 2009, at 8:00 p.m.[48]  The 8:00 p.m. meeting minutes list Susan, Jeffrey, Laurie, Jason, Melanie, and Eric as present at the meeting.  Three

---

[45]     Pl.'s Mot. for Summ. J. Ex. C.

[46]     *Id.*

[47]     *Id.* Ex. G.

[48]     *Id.* Ex. H.

16

directors—Todd, Bonnie, and Justin—were listed as not present. The purported directors who were present all voted to remove Terry as a member of Rainbow Mountain without cause.[49] The minutes show that the vote terminated Terry's membership because six of the nine directors voted in favor of termination, which satisfied the requirement in the bylaws that 2/3 of the full board vote to remove a member. At the same meeting, the same six purported directors that voted to terminate Terry's membership—namely, Susan, Jeffrey, Laurie, Jason, Melanie, and Eric—voted to appoint Laurie as the new Secretary of Rainbow Mountain.[50]

On May 1, 2009, the board sent a letter to Terry notifying him that his membership in Rainbow Mountain had been terminated.[51] In the letter, the board stated that "the affirmative vote of of [sic] the majority of the Full Board of Directors was reached to terminate your membership with Rainbow Mountain Incorporated without cause" and that "termination of your membership automatically terminates your positions as Senior Vice-president [sic] and Secretary of the Corporation, as well."[52]

---

[49]     *Id.*

[50]     *Id.*

[51]     Compl. Ex. D.

[52]     *Id.*

## C.    This Litigation

Rainbow Mountain filed this declaratory judgment action, seeking a determination that Terry was properly removed as a director, officer, and member of Rainbow Mountain and that, as a result, Terry is not entitled to occupy a cabin on Rainbow Mountain's property. On November 19, 2014, Terry filed an answer and counterclaim asserting that because Mark and Cindy were never properly removed as members, the members' removal of Terry as a director, their appointment of Eric to the board, and the board's removal of Terry as a member were invalid corporate actions. Terry's initial answer and counterclaim also alleged two other counterclaims (1) challenging the transfer of the 97 acres of land to Rainbow Mountain as void and (2) seeking the revocation of the Rainbow Mountain certificate of incorporation. Vice Chancellor Parsons dismissed the two additional counterclaims on August 4, 2015 and allowed only the membership dispute to move forward.[53]

On September 25, 2015, Terry filed his First Amended Answer and Counterclaim ("Amended Counterclaim"), which also seeks a declaratory judgment as to the proper membership of Rainbow Mountain. The Amended Counterclaim

---

[53]    *Rainbow Mountain Inc. v. Begeman*, C.A. No. 10221-VCMR (Del. Ch. Aug. 4, 2015) (TRANSCRIPT). At the oral argument before Vice Chancellor Parsons, Terry agreed to dismissal of the two dismissed counterclaims, leaving only the membership dispute.

18

also requests equitable corrections to the Rainbow Mountain certificate of incorporation in recognition of the fact that Rainbow Mountain does not operate as a charitable nonstock corporation despite a requirement in its certificate of incorporation that it do so.

Rainbow Mountain moved for summary judgment on March 3, 2016. On April 5, 2016, Terry opposed Rainbow Mountain's motion and himself moved for summary judgment. Terry appears to have abandoned his counterclaim for Court-ordered corrections to the Rainbow Mountain certificate of incorporation because his briefing on the motions for summary judgment focuses only on the question of whether Terry remains a member, director, and officer of Rainbow Mountain.[54] This opinion, therefore, does not address Terry's claim for corrections to the Rainbow Mountain certificate of incorporation.

On June 30, 2016, Rainbow Mountain filed a reply brief in support of its motion for summary judgment and an opposition to Terry's motion. Terry filed a reply brief on July 25, 2016, and the Court heard oral argument on the cross motions for summary judgment on October 11, 2016. Rainbow Mountain filed a letter on November 29, 2016, indicating that the parties stipulated to a decision on the paper

---

[54] Def.'s Mot. for Summ. J. 6; Def.'s Reply to Pl.'s Mot. for Summ. J. 12, 53.

record.  Terry filed a supplemental brief on December 13, 2016, and Rainbow Mountain filed a response to that brief on December 23, 2016.

## II.    ANALYSIS

Generally, the Court may grant a motion for summary judgment where there exists "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[55]  But "[w]here the parties have submitted cross-motions for summary judgment on a stipulated record, as the parties here have done, I may treat the matter as submitted for a decision on the merits."[56]

### A.    Members Cannot Be Removed Without Cause Under the 2003 Bylaws of Rainbow Mountain

"[T]he construction and interpretation of an unambiguous written contract is an issue of law within the province of the court."[57]  "Corporate charters and bylaws are contracts among a corporation's shareholders."[58]  "[T]he rules that govern the interpretation of statutes, contracts, and other written instruments apply to the

---

[55]    Ct. Ch. R. 56(c).

[56]    *Farmers for Fairness v. Kent Cty. Levy Ct.*, 2013 WL 3333039, at *3 (Del. Ch. July 1, 2013); *see also* Ct. Ch. R. 56(h).

[57]    *Bank of N.Y. Mellon v. Realogy Corp.*, 979 A.2d 1113, 1120 (Del. Ch. 2008) (quoting *Law Debenture Trust Co. of N.Y. v. Petrohawk Energy Corp.*, 2007 WL 2248150, at *5 (Del. Ch. Aug. 1, 2007)).

[58]    *Strougo v. Hollander*, 111 A.3d 590, 597 (Del. Ch. 2015) (quoting *Airgas, Inc. v. Air Prods. & Chems., Inc.*, 8 A.3d 1182, 1188 (Del. 2010)) (internal quotation marks omitted).

20

interpretation of corporate charters and bylaws."[59] And bylaws should be interpreted in such a way as to not render any of their provisions meaningless.

Given that the 2003 Bylaws were ratified in the July 7, 2005 written consent of members, they were the operative bylaws when Mark and Cindy were removed as members on September 21, 2005. In relevant part, the 2003 Bylaws state that "[m]embership in the Corporation, and all rights and licenses incident thereto, may be terminated for cause."[60] The bylaws also contain a detailed definition of "Cause," enumerating seven acts that constitute "Cause."[61]

The parties in this case do not argue that the 2003 Bylaws are ambiguous as to whether members may be removed without cause. While "for cause" is not capitalized in article IX, paragraph 2, the parties present no argument that "for cause" does not refer to the defined term "Cause" in article X, paragraph 12(A). And the capitalized term "Cause" appears in the Rainbow Mountain bylaws only in the defined terms article. The explicit references to "Members" in the detailed definition of "Cause" and the seven enumerated instances of "Cause" would be meaningless if "for cause" did not refer to the defined term "Cause." Thus, article IX of the 2003

---

[59] *Id.* (quoting *Sassano v. CIBC World Mkts. Corp.*, 948 A.2d 453, 462 (Del. Ch. 2008)) (internal quotation marks omitted).

[60] 2003 Bylaws art. IX, ¶ 2.

[61] *Id.* art. X, ¶ 12(A).

21

Bylaws requires that "Cause," as defined in article X, paragraph 12(A), exist to terminate a membership in Rainbow Mountain. Moreover, the result is the same even if "Cause" does not apply to article IX, paragraph 2 because the provision only allows termination of membership "for cause." The plain meaning of "for cause" is that some cause is required before the action in question may be taken. In other words, "for cause" means not without cause.

### B. Mark and Cindy Were Not Properly Removed as Members of Rainbow Mountain

The September 21, 2005 written consent of directors did not properly terminate Mark and Cindy's memberships in Rainbow Mountain because the resolution is contrary to the 2003 Bylaws. Article IX, paragraph 2 of the 2003 Bylaws provides that membership in Rainbow Mountain "may be terminated for cause."[62] The 2003 Bylaws list seven activities that constitute "Cause" for a member or director.[63] Article IX, paragraph 2 further requires that the board "hold a hearing and the Member shall be given no less than 5 days written notice of such hearing.

---

[62] *Id.* art. IX, ¶ 2.

[63] *Id.* art. X, ¶ 12(A).

The Member shall have the opportunity to be heard at such meeting."[64]  And a 2/3 vote of the board of directors is required to expel a member.[65]

The evidence shows that Mark and Cindy were removed without cause in violation of the 2003 Bylaws.  The September 21, 2005 written consent incorrectly quotes the bylaws as stating that "[m]embership in the Corporation, and all rights and licenses incident thereto, may be terminated by the Board of Directors at any time without cause."[66]  Further, no evidence in the record suggests that Mark or Cindy had satisfied any of the seven enumerated definitions of "Cause," and Rainbow Mountain does not argue that Mark and Cindy were terminated "for cause."

Additionally, no evidence shows that Mark and Cindy had notice of their proposed removal as members or the opportunity to be heard to which they were entitled under article IX of the bylaws.  The September 21, 2005 written consent states that "for the purpose of this special meeting 'notice' is given when the written consent in league with today's proceeding is deposited ('delivery') in the United States mail, postage prepaid, directed to the member at such and such member's address as it appears on the records of the corporation."[67]  But the written consent

---

[64]    *Id.* art. IX, ¶ 2.

[65]    *Id.*

[66]    First Am. Answer & Countercl. Ex. W, at 2 n.2.

[67]    *Id.* Ex. W, at 3.

does not state that it will be mailed, and the record contains no evidence showing that it ever was mailed to Mark or Cindy. The board's attempt to terminate Mark and Cindy as members of Rainbow Mountain, therefore, was not effective.

## C. Terry Is Not Estopped from Arguing that Mark and Cindy Were Improperly Removed as Members

Rainbow Mountain asserted at oral argument and in its briefing that Terry is estopped from arguing that Mark and Cindy were never properly terminated as members because he proposed their termination and signed the September 21, 2005 written consent as a director.[68] Estoppel is an equitable defense that "may be invoked 'when a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to his detriment.'"[69] Estoppel is a valid defense to voidable corporate actions but not to void corporate actions.[70] It is well settled in Delaware that the "essential distinction between voidable and void acts is that the former are those which may be found to have been performed in the

---

[68] Oral Arg. Tr. 63.

[69] *Waggoner v. Laster*, 581 A.2d 1127, 1136 (Del. 1990) (quoting *Wilson v. Am. Ins. Co.*, 209 A.2d 902, 903-04 (Del. 1965)).

[70] *Id.* at 1137 ("Estoppel, however, has no application in cases where the corporation lacks the inherent power to issue certain stock or where the corporate contract or action approved by the directors or stockholders is illegal or void.").

interest of the corporation but beyond the authority of management, as distinguished from acts which are [u]ltra vires, fraudulent or gifts or waste of corporate assets."[71]

This Court in *Klaassen v. Allegro Development Corp.* analyzed several cases dealing with a corporation's failure to give notice of a directors' meeting and concluded that:

> Delaware law distinguishes between (i) a failure to give notice of a board meeting in the specific manner required by the bylaws and (ii) a contention that the lack of notice was inequitable. In the former scenario, board action taken at the meeting is void. In the latter scenario, board action is voidable in equity, so equitable defenses apply.[72]

The Court also observed that "traditionally, when a board took action in contravention of a mandatory bylaw, the board action was treated as void."[73] The Court recognized that "the case law in this area has not always been consistent, and some cases apply equitable defenses even if a bylaw was violated."[74] But the rule in *Klaassen* "is the best I can do to harmonize the decisions into a workable rule. It

---

[71]    *Michelson v. Duncan*, 407 A.2d 211, 218-19 (Del. 1979).

[72]    *Klaassen v. Allegro Dev. Corp.*, 2013 WL 5739680, at *19 (Del. Ch. Oct. 11, 2013).

[73]    *Id.* The Supreme Court in affirming the Court of Chancery's decision declined to approve or disapprove of the rule that the Court of Chancery gleaned from the precedent because it was not necessary to its decision. *Klaassen v. Allegro Dev. Corp.*, 106 A.3d 1035, 1046 n.75 (Del. 2014).

[74]    *Klaassen*, 2013 WL 5739680, at *24 n.10.

25

necessarily represents one trial judge's effort and may not accurately reflect Delaware law."[75]  I agree and follow that logic here.

The Rainbow Mountain board's removal of Mark and Cindy as members of the corporation without cause was in contravention of the Rainbow Mountain bylaws.  Thus, Terry is not estopped from arguing that Mark and Cindy were improperly removed as members even though he participated in their removal.  Because Mark and Cindy were not properly removed as members, Rainbow Mountain has operated with an incorrect understanding of who its members are since September 21, 2005.

### D.     Terry Was Not Properly Removed as a Director of Rainbow Mountain

On November 15, 2008, certain Rainbow Mountain members purported to remove Terry as a director and amend the bylaws, but their attempt was not effective because the meeting of members lacked a quorum.  At that meeting, five Rainbow Mountain members—Laurie, Jeffrey, Susan, Jason, and Melanie—were present and voted in favor of removing Terry from the board of directors.  The meeting minutes list four members—Terry, Todd, Bonnie, and Justin—as not present.[76]  When Mark and Cindy are counted as members, however, six of the eleven total members were

---

[75]     *Id.*

[76]     Pl.'s Mot. for Summ. J. Ex. C.

26

not present.[77] Under the Rainbow Mountain bylaws, members holding more than 50% of the votes entitled to be cast must be present in order to have a quorum at a meeting of members.[78] As a result, the members could not act at such a meeting, and Terry was not properly removed as a director of Rainbow Mountain. Additionally, the purported bylaw amendments were not effective, and the 2003 Bylaws remain the operative bylaws of Rainbow Mountain.

## E. Eric Was Not Properly Appointed to the Board of Directors

On April 29, 2009 at 7:34 p.m., six of the members of Rainbow Mountain held a meeting at which they purported to elect Eric to fill the vacancy on the board of directors that would have been left if Terry had been properly removed. The members' actions at the 7:34 p.m. meeting were not effective. As an initial matter, there was no vacancy on the Rainbow Mountain board because, as discussed above, Terry was not properly removed from the board. The 2003 Bylaws state that "[t]he number of directors that shall constitute the Full Board of Directors shall be nine (9)."[79] The record contains no evidence of an amendment to the bylaws expanding

---

[77]    If Terry is correct that Susan, Jason, Melanie, Bonnie, and Justin are not Regular Members of Rainbow Mountain, then Rainbow Mountain had only six Regular Members on November 15, 2008, namely Jeffrey, Laurie, Terry, Todd, Cindy, and Mark. Of those six, only two—Laurie and Jeffrey—were present at the meeting, which also fails to reach a quorum.

[78]    2003 Bylaws art. III, ¶ 5.

[79]    *Id.* art. V, ¶ 2.

the size of the board. And the minutes of the 7:34 p.m. meeting clearly indicate that the meeting participants believed they were filling a vacancy rather than adding a new director position. The minutes state that "Eric Ketchum has been appointed to fill the current vacancy on the Board of Directors until the next election of directors takes place . . . ."[80] Eric was not properly appointed because the Rainbow Mountain board had no vacancy.

Even if the members could have filled a vacancy on the board, however, there was not a quorum at the 7:34 p.m. meeting. The 7:34 p.m. meeting minutes list six members in attendance—Laurie, Jeffrey, Susan, Jason, Melanie, and Eric.[81] It is unclear when or if Eric became a member of Rainbow Mountain, but even assuming he properly was made a member of the corporation, six members do not represent the required "[m]embers holding more than 50% of the votes that may be cast" for a quorum.[82] When Mark, Cindy, and Eric are counted, Rainbow Mountain has twelve members—namely Mark, Laurie, Cindy, Jeffrey, Todd, Terry, Susan, Jason, Melanie, Bonnie, Justin, and Eric.[83] Six members hold exactly 50% of the votes that

---

[80] Pl.'s Mot. for Summ. J. Ex. G.

[81] *Id.*

[82] 2003 Bylaws art. III, ¶ 5.

[83] At oral argument, Terry also stated that Roger should have been considered a member of Rainbow Mountain. The evidence in the record, however, does not explain when or if Roger became a member of Rainbow Mountain.

28

may be cast and thus fall short of "more than 50%."[84] The members' attempt to appoint Eric to the Rainbow Mountain board thus was not effective because, absent a quorum, a proper meeting of the members was not held.

## F. Terry Was Not Properly Removed as a Member of Rainbow Mountain

Because the members' attempt to appoint Eric to the Rainbow Mountain board was ineffective, the board was composed of Susan, Jeffrey, Laurie, Jason, Melanie, Todd, Bonnie, Justin, and Terry at the April 29, 2009, 8:00 p.m. meeting of directors. The improperly constituted board's attempt to remove Terry as a member of Rainbow Mountain at the 8:00 p.m. meeting thus was ineffective.[85] When Eric's vote is not counted, only five of the nine directors on the board voted to remove Terry as a member. That vote fails to reach the 2/3 of the directors required to remove a member under the Rainbow Mountain bylaws.[86] Terry, thus, was not effectively removed as a member and remains a member of Rainbow Mountain.

---

[84] 2003 Bylaws art. III, ¶ 5. If Terry is correct that Eric, Susan, Jason, Melanie, Bonnie, and Justin are not Regular Members of Rainbow Mountain, then the only Regular Members present at the 7:34 p.m. meeting were Laurie and Jeffrey—only two of the six Rainbow Mountain members. A quorum would still not have been satisfied.

[85] Terry received notice of the April 29, 2009, 8:00 p.m. meeting of directors. Pl.'s Mot. for Summ. J. Ex. B (certified mail receipts).

[86] 2003 Bylaws art. IX, ¶ 2 ("The Member may be expelled only by a vote of expulsion by 2/3 or more of the Full Board of Directors.").

## G.     Terry Was Properly Removed as Secretary But Not as Senior Vice-President of Rainbow Mountain

Terry's term as Secretary ends under the Rainbow Mountain bylaws upon his death, resignation, removal, or replacement when his successor is chosen and qualified.[87]   Terry has litigated this case on his own behalf and appeared at oral argument.   He clearly has not died.   No evidence suggests that he resigned as Secretary.   And he seeks a declaration from this Court that he remains the Secretary of Rainbow Mountain, which is inconsistent with his resignation.   Further, no board resolution or written consent of directors in the record explicitly removed Terry as the Secretary of Rainbow Mountain, and under the bylaws "[o]nly the Board of Directors may remove an officer from his or her office."[88]

Terry's term as Secretary ended, however, when the board appointed Laurie to fill the Secretary position.   Under the 2003 Bylaws, "[e]ach officer of the Corporation shall hold office until his or her successor is chosen and qualified or until he or she dies, resigns or is removed."[89]   And a majority of the directors present at a meeting of the board where a quorum is present can appoint a Rainbow Mountain

---

[87]     *Id.* art. VI, ¶ 4.

[88]     *Id.*

[89]     *Id.*

officer.[90]  For a directors' meeting, "a majority of the directors in office immediately before the meeting begins shall constitute a quorum for the transaction of business . . . ."[91]  At the 8:00 p.m. meeting, five of the nine directors—namely, Laurie, Jeffrey, Susan, Jason, and Melanie—were present, constituting a quorum.  The same five directors also voted to appoint Laurie to the position of Secretary at that meeting.[92]  Because Laurie was properly chosen as Secretary of Rainbow Mountain, Terry's term as Secretary ended at the 8:00 p.m. meeting on April 29, 2009.[93]

Rainbow Mountain has failed to adduce any evidence that Terry was removed from his position as Senior Vice-President.  The notice that the Rainbow Mountain board sent to Terry on May 1, 2009 states that "termination of your membership automatically terminates your positions as Senior Vice-president [sic] and Secretary of the Corporation, as well."[94]  But neither the termination letter nor Rainbow Mountain's briefing points to any bylaw that automatically terminates a member's officer positions when his or her membership is terminated.  And even if a Rainbow Mountain officer is automatically removed when he or she is removed as a member,

---

[90]     *Id.* art. VI, ¶ 1, art. V, ¶ 9.

[91]     *Id.* art. V, ¶ 9.

[92]     Pl.'s Mot. for Summ. J. Ex. H.

[93]     As discussed above, Terry received notice of the 8:00 p.m. meeting.  *See supra* note 85.

[94]     Compl. Ex. D.

31

Terry was not properly removed as a member, as discussed above. Absent evidence of board action removing Terry as a Senior Vice-President or appointing his successor, this Court cannot hold that Terry was removed as a Senior Vice-President of Rainbow Mountain.

### H. Terry's Right to Live on the Rainbow Mountain Real Estate as a Regular Member Remains

Under article II, paragraph 3(A) of the 2003 Bylaws, all Regular Members have the right to "live on the grounds of Rainbow Mountain Incorporated with their spouse and children . . . ."[95] Because Terry is a Regular Member of Rainbow Mountain, Terry may live on the Rainbow Mountain real estate. I do not opine on the full scope of Terry's rights to live on the Rainbow Mountain property because (1) the parties have not fully briefed or submitted evidence regarding the interpretation of article II, paragraph 3(A) of the 2003 Bylaws and (2) Terry admits that he did not formally request a license through article II, paragraph 4 of the 2003 Bylaws.[96]

## III. CONCLUSION

For the reasons stated herein, the 2003 Bylaws are the operative bylaws of Rainbow Mountain; Terry remains a Regular Member of Rainbow Mountain; and,

---

[95]   2003 Bylaws art. II, ¶ 3(A).

[96]   Additional Submission in Supp. of Def.'s Mot. for Summ. J. 22.

the current board of directors of Rainbow Mountain is composed of Susan, Jeffrey, Laurie, Jason, Melanie, Todd, Bonnie, Justin, and Terry. As a Regular Member, Terry has the right to live on the Rainbow Mountain property. Terry is no longer the Secretary of Rainbow Mountain, but he remains a Senior Vice-President. This Court expresses no opinion on the membership status of any person other than Mark, Cindy, and Terry.

**IT IS SO ORDERED.**