IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| UNITED TECHNOLOGIES CORP., a Delaware corporation, | § § § § § § § § § § § § § § § | No. 127, 2014 |
| Defendant-Below, Appellant, | | |
| v. | | Court Below: Court of Chancery of the State of Delaware C.A. No. 8624-VCG |
| LAWRENCE TREPPEL, | | |
| Plaintiff-Below, Appellee. | | |

Submitted: December 3, 2014
Decided: December 23, 2014

Before **STRINE**, Chief Justice; **HOLLAND**, **RIDGELY**, and **VALIHURA**, Justices; **COONIN**, Judge,[*] constituting the Court *en Banc*.

Upon appeal from the Court of Chancery. **REVERSED AND REMANDED**.

William M. Lafferty, Esquire, D. McKinley Measley, Esquire, Morris Nichols Arsht & Tunnell LLP, Wilmington, Delaware; William Savitt, Esquire (*argued*), Ryan A. McLeod, Esquire, Anitha Reddy, Esquire, Wachtell, Lipton, Rosen & Katz, New York, New York, for Appellant.

Blake A. Bennett, Esquire, Cooch and Taylor, P.A., Wilmington, Delaware; Felipe J. Arroyo, Esquire (*argued*), Brian J. Robbins, Esquire, Julia M. Williams, Esquire, Robbins Arroyo LLP, San Diego, California, for Appellee.

**STRINE**, Chief Justice:

---

[*] Sitting by designation under Del. Const. art. IV, § 12.

# I.    INTRODUCTION

United Technologies Corp., a Delaware corporation, appeals from a judgment by the Court of Chancery holding that the court did not have the authority to impose a specific condition on a books and records inspection under § 220(c) of the Delaware General Corporation Law (DGCL).  United Technologies had sought to restrict the use of any information garnered from an inspection by a shareholder, Lawrence Treppel, to legal action in a Delaware court.  The Court of Chancery denied the corporation's request, determining that such a limitation "is not the type of restriction that 220(c) seeks to impose."[1]  On appeal, United Technologies argues that the court does have the authority, under the statute itself and the line of cases interpreting it, to impose the requested limitation, and the court erred by not doing so in this case.  Because the plain text of § 220 provides broad power to the Court of Chancery to condition a books and records inspection, the court erred in determining that it lacked authority under the statute to impose the requested restriction.  We therefore reverse on that issue and remand so that the Court of Chancery can consider in the first instance whether, in its discretion, it should impose such a restriction based on the specific facts in this case.

# II.    BACKGROUND[2]

On August 22, 2012, Lawrence Treppel, a United Technologies shareholder since at least 2002,[3] sent the company a litigation demand letter, demanding that it "investigate,

---

[1] *Treppel v. United Technologies Corp.*, C.A. No. 8624-VCG, Tr. Transcript, Jan. 13, 2014 [*hereinafter* Opinion], at 77.
[2] The facts are not disputed by the parties, and are drawn from the record presented to the Court of Chancery below and the briefing on appeal.

1

address, remedy, and commence proceedings against certain officers and directors."[4]

Treppel's claims arose out of a June 2012 investigation by the U.S. Department of Justice into violations of federal law by United Technologies in exporting software to the Chinese government for use in a military helicopter. United Technologies ultimately signed a Deferred Prosecution Agreement with the Justice Department, in which it agreed to pay $20 million and implement remedial compliance measures. The company also agreed to pay $55 million as part of a consent agreement with the State Department for making false statements about those transactions.

Treppel was not the first United Technologies stockholder to take legal action after the misconduct was revealed; stockholder Harold Grill separately sent a § 220 inspection demand in July 2012. Grill's request was approved by the company, and the results of his inspection led to a derivative action filed in the Court of Chancery on November 5, 2012. In June 2013, the Court of Chancery dismissed Grill's suit because he had not first made a litigation demand on the board, nor had he adequately shown that demand was excused.[5] This Court summarily affirmed in December 2013.[6] Treppel claims that he was not aware of Grill's suit when he sent his own demand letter under § 220.[7]

---

[3] Treppel was only able to produce documentation of ownership since March 2002, but he claims that he was a beneficial owner of the stock since before 2000, because he inherited the stock from his parents. App. to Opening Br. at 241 (claiming in his Verified Shareholder Derivative Complaint for Relief to have been a shareholder since before 2000); 269-70 (deposition testimony of Treppel acknowledging that he did not inherit the stock until January 2002, and could only document ownership as of March 2002).
[4] App. to Opening Br. at 138.
[5] *Harold Grill 2 IRA v. Chenevert*, 2013 WL 3014120 (Del. Ch. June 18, 2013).
[6] *Harold Grill 2 IRA v. Chenevert*, 2013 WL 6726891 (Del. Dec. 19, 2013).
[7] App. to Opening Br. at 287.

While Grill's suit was pending, United Technologies' board considered Treppel's letter. The board eventually rejected his demand, writing in a letter in December 2012 that it had determined that litigation was "not in the best interests of the Company."[8] The letter contained only two paragraphs, and did not provide any additional explanation for the board's decision. Treppel responded in March 2013, seeking to use his inspection rights under § 220 to "evaluate" the board's decision to reject his litigation demand.[9]

United Technologies agreed to allow Treppel to inspect most of his requested documents, but insisted that he first sign a confidentiality agreement. The company's proposed confidentiality agreement contained a provision requiring that "any claim, dispute, controversy or causes of action . . . arising out of, relating to, involving or in connection with" the inspection be brought in a Delaware court.[10] Treppel refused to bind himself to suing in Delaware.[11] After several unsuccessful rounds of negotiation between the parties, Treppel filed a § 220 action in the Court of Chancery seeking access to United Technologies' books and records without any usage restrictions. When Treppel filed his claim, the company's bylaws did not contain a forum selection clause

---

[8] App. to Opening Br. at 197.
[9] App. to Opening Br. at 198.
[10] App. to Opening Br. at 213.
[11] Treppel's opposition to suing in Delaware does not appear to be an issue of personal or logistical inconvenience: Treppel appeared in Delaware in person for his deposition in October, joking that he considered it easier to fly to Delaware than to drive to Los Angeles from his home in San Diego. App. to Opening Br. at 287. He then returned to Delaware for the trial in January. App. to Opening Br. at 433.

establishing Delaware as the proper forum for disputes, but the board adopted such a provision on December 11, 2013, while Treppel's suit was pending.[12]

United Technologies responded to Treppel's claims in the Court of Chancery with two separate but related arguments: first, that Treppel's intention to use information from his inspection to file suit outside of Delaware negated his proper purpose under § 220(b). Alternatively, United Technologies argued that even if Treppel's purpose was proper, the Court of Chancery should limit the use of information gained from a books and records inspection to legal action in a Delaware court, using its authority under § 220(c) to prescribe limitations or conditions in connection with granting the inspection. Treppel contended in response that the proposed restriction was unreasonable, but did not argue that it was *per se* beyond the court's statutory authority.[13]

During his October 2013 deposition, Treppel refused to explain his opposition to the Delaware provision in United Technologies' original confidentiality agreement, citing

---

[12] The new section of the bylaws states: "Unless the Corporation consents in writing to the selection of an alternative forum, the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action asserting a claim of breach of a fiduciary duty owed by any director or officer or other employee of the Corporation to the Corporation or the Corporation's stockholders, (iii) any action asserting a claim against the Corporation or any director or officer or other employee of the Corporation arising pursuant to any provision of the Delaware General Corporation Law or the Corporation's Certificate of Incorporation or Bylaws (as either may be amended from time to time), or (iv) any action asserting a claim against the Corporation or any director or officer or other employee of the Corporation governed by the internal affairs doctrine shall be a state court located within the State of Delaware (or, if no state court located within the State of Delaware has jurisdiction, the federal district court for the District of Delaware)." United Technologies' board is empowered to amend the bylaws "by an affirmative vote of a majority of the whole Board." App. to Opening Br. at 330.

[13] *See* App. to Opening Br. at 403.

4

attorney-client privilege.[14]  United Technologies pointed out before the Court of Chancery and again on appeal that Treppel had previously been a plaintiff in three other shareholder suits against different companies, none of which were brought in the corporation's state of incorporation or even his own home state of California.  Two of the three were Delaware corporations.[15]  Treppel testified during his deposition that he could not provide any "non-privileged" explanation for choosing to file in those other states.[16]

Although the parties' trial briefing focused primarily on whether Treppel's purpose was proper under § 220(b),[17] the Court of Chancery seemed more focused on whether it had the authority under § 220(c) to restrict a stockholder's use of books and records to any legal action in a Delaware court.[18]  During the trial, the Court of Chancery expressed particular concerns about the implications of setting such a limitation.[19]

---

[14] *Cf., e.g., In re S. Peru Copper Corp. S'holder Derivative Litig.*, 52 A.3d 761 (Del. Ch. 2011), *aff'd sub nom Americas Mining Corp. v. Theriault*, 51 A.3d 1213 (Del. 2012); *William Penn P'ship v. Saliba*, 13 A.3d 749 (Del. 2011); *In re Coca-Cola Enters., Inc. S'holders Litig.*, 2007 WL 3122370 (Del. Ch., Oct. 17, 2007), *aff'd sub nom Int'l Broth. Teamsters v. Coca-Cola Co.*, 2008 WL 2484587 (Del. June 20, 2008); *Paramount Commc'ns Inc. v. QVC Network Inc.*, 637 A.2d 34 (Del. 1993); *Revlon, Inc. v. MacAndrews & Forbes Holdings*, 506 A.2d 173 (Del. 1986); *Smith v. Van Gorkom*, 488 A.2d 858 (Del. 1985).

[15] The three suits were: *Treppel v. XTO Energy, Inc.* (class action suit against Delaware corporation filed in Texas); *Treppel v. Qwest Commc'ns, Int'l.* (class action suit against Delaware corporation filed in Colorado); and *Treppel v. Reason* (derivative suit against Virginia corporation filed in D.C.).

[16] App. to Opening Br. at 278.

[17] *See* App. to Opening Br. at 342 (Treppel's Opening Pre-Trial Br.); 370 (United Technologies' Opening Br.).

[18] Opinion at 41 ("There is I think one really interesting issue here, and I'm happy to hear you on whatever you want to put out, but I am curious . . . on what basis you think, if you do so think, that I could limit the use of any material that's produced to litigation within this jurisdiction."); Opinion at 65 ("And I'm more concerned with whether I have the authority to, and if I have the authority to, whether I should exercise the discretion, to place a restriction under 220(c). . . .").

[19] Opinion at 53.

Accordingly, in its post-trial bench opinion, the Court of Chancery ruled that United Technologies was not entitled to the restriction it sought. The Court of Chancery determined that the limit "is not the type of restriction that 220(c) seeks to impose. There is a mechanism for limiting which forum a suit may be brought in to enforce corporate interests, and that is through either a charter or bylaw provision."[20] The Court of Chancery also held that Treppel's purpose for inspecting United Technologies' books and records – inquiring into the board's decision to deny his litigation demand – was proper.[21]

On appeal, United Technologies argues that the Court of Chancery erred in limiting its own authority to impose the requested restriction, and that the company is entitled to the restriction in this case. The corporation has not appealed the Court of Chancery's determination that Treppel's stated purpose for an inspection was proper. Treppel argued that the Court of Chancery properly exercised its discretion to reject United Technologies' requested restriction. But at oral argument, Treppel conceded that the Court of Chancery does have the authority under § 220 to impose such a restriction.[22]

### III.    ANALYSIS

**A.    The Court of Chancery Has Broad Authority Under § 220(c) to Limit the Use of Corporate Books and Records**

We review *de novo* a trial court's conclusions of law, including its interpretation of a statute.[23] But any factual findings are entitled to a "high level" of deference.[24]

---

[20] Opinion at 77.
[21] Opinion at 75.
[22] *See* Answering Br. at 3; 19.
[23] *Sussex Cnty. Dept. of Elections v. Sussex Cnty. Republican Comm.*, 58 A.3d 418, 421 (Del. 2013).

Section 220(c) of the DGCL gives broad discretion to the Court of Chancery to condition a books and records inspection: "The Court may, in its discretion, prescribe *any limitations or conditions* with reference to the inspection, or award such other or further relief as the Court may deem just and proper."[25]  Because of the breadth of this discretion, Delaware courts have viewed the determination of whether to impose a condition or limitation on an inspection as inherently case-by-case and "fact specific."[26]

Beyond noting that there were other mechanisms for restricting suits to Delaware, including the forum selection bylaw that United Technologies eventually adopted, the Court of Chancery did not point to any textual or precedential reason that it could not impose a restriction on the use of information gained through a books and records inspection.[27]  Nor does Treppel argue that there is any basis for limiting the Court of Chancery's discretion in this manner.[28]

Indeed, as Treppel acknowledges, the ability to limit the use of information gathered from an inspection – not just the scope of the inspection itself – has long been

---

[24] *DV Realty Advisors LLC v. Policemen's Annuity and Ben. Fund of Chicago*, 75 A.3d 101, 108 (Del. 2013).

[25] 8 *Del. C.* § 220(c) (emphasis added).

[26] *Espinoza v. Hewlett-Packard Co.*, 32 A.3d 365, 372 (Del. 2011) (noting that on the related issue of the scope of an inspection, "[w]hether or not a particular document is essential to a given inspection purpose is fact specific and will necessarily depend on the context in which the shareholder's inspection demand arises").

[27] Treppel conceded in his briefing to the Court of Chancery that such a bylaw might preclude suit outside of Delaware: "Here, the directors had not exercised their statutory authority to amend bylaws at the time Plaintiff made his Inspection Demand.  There have been no recent amendments to the Company's corporate charter.  If [United Technologies'] directors had taken either action, then its attempt to limit the jurisdiction may be correct."  App. to Opening Br. at 402.  But during the trial, Treppel argued that the new bylaw was irrelevant because it "was adopted after Mr. Treppel acquired his shares."  App. to Opening Br. at 441.

[28] *See* Answering Br. at 3; 19.

7

recognized as within the Court of Chancery's discretion.[29]  Indeed, "Delaware courts

have repeatedly 'placed reasonable restrictions on shareholders' inspection rights in the

context of suit brought under 8 *Del. C.* § 220.'"[30]  In some cases, inspections have been

denied entirely if the plaintiff's "proper purpose" for seeking books and records could not

be effectuated because, for example, the plaintiff would lack standing to sue if the

inspection warranted further legal action.[31]  Mindful of the costs of inspections – which

---

[29] For example, Delaware courts have frequently conditioned books and records inspections on agreements to keep any sensitive, non-public information confidential.  *See, e.g.*, *Disney v. Walt Disney Co.*, 2005 WL 1538336 (Del. Ch. June 20, 2005); *Disney v. Walt Disney Co.*, 857 A.2d 444 (Del. Ch. 2004) (holding that a stockholder could not use a § 220 inspection to publicly disseminate otherwise confidential information); *CM&M Group, Inc. v. Carroll*, 453 A.2d 788 (Del. 1982) (modifying the Court of Chancery's order to provide that any inspection was contingent upon confidentiality agreement).  These use restrictions are consistent with the need to protect legitimate corporate interests.  *See* Edward P. Welch, et al., *Folk on the Delaware General Corporation Law*, § 220.06, at 7-237 (2014) ("In furtherance of its duty to safeguard the rights and legitimate interests of the corporation, the Court of Chancery is empowered to protect the corporation's legitimate interests and to prevent possible abuse of the stockholder's right of inspection by placing such reasonable restrictions and limitations as it deems proper on the exercise of the right."); Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 8.06[j], at 8-166 (2013) ("the court is . . . inclined where possible . . . to permit inspection of confidential books and records pursuant to restrictions that strike a balance between the competing interests of the company and the stockholder.").
[30] *Disney*, 2005 WL 1538336, at *1 (quoting *Stroud v. Grace*, 606 A.2d 75, 89 (Del. 1992)); *see also CM & M Group, Inc.* 453 A.2d at 793 ("Counterposed to the duty to protect the rights of the stockholder, the Court has the duty to safeguard the rights and legitimate interests of the corporation."); *In re Petition of B & F Towing & Salvage Co.*, 551 A.2d 45, 51 n. 7 (Del. 1988); *Henshaw v. American Cement Corp.*, 252 A.2d 125, 130 (Del. Ch. 1969).
[31] *See, e.g.*, *Graulich v. Dell*, 2011 WL 1843813 (Del. Ch. May 16, 2011) (holding that because any suit by a stockholder would be procedurally barred, he lacked a proper purpose for inspecting corporate books and records); *West Coast Management & Capital, LLC v. Carrier Access Corp.*, 914 A.2d 636, 645-46 (Del. Ch. 2006) (holding that "West Coast's sole purpose for investigating claims of wrongdoing is to obtain additional information . . . to pursue a second derivative suit.  This purpose is not reasonably related to West Coast's interest as a stockholder as West Coast is not a proper plaintiff to bring such an action."); *Polygon Global Opportunities Master Fund v. West Corp.*, 2006 WL 2947486, at *5 (Del. Ch. Oct. 12, 2006) ("Polygon's sole purpose for investigating claims of wrongdoing is to determine whether the board members 'breached their fiduciary duties in approving the Recapitalization Transaction.'  This purpose is not reasonably related to Polygon's interest as a stockholder as it would not have standing to

8

are ultimately borne by stockholders – Delaware courts have also been reluctant to grant § 220 relief when there is other pending litigation against the corporation and discovery is thus the more appropriate mechanism for obtaining relevant documents.[32]

In restricting a stockholder's ability to use corporate books and records in certain ways, Delaware case law has consistently reflected the underlying principle that the stockholder's inspection right is a "qualified" one.[33] Accordingly, the Court of Chancery has wide discretion to shape the breadth and use of inspections under § 220 to protect the legitimate interests of Delaware corporations. Because nothing in the text of § 220 itself or Delaware case law in interpreting it limits the Court of Chancery's authority to restrict the use of material from an inspection when those interests are threatened, the Court of

---

pursue a derivative action based on any potential breaches.") (internal citations omitted); R. Franklin Balotti & Jesse A. Finkelstein, *The Delaware Law of Corporations and Business Organizations*, § 7.47 at 7-106.4 (3d ed. 2014) ("If the sole purpose of inspection is to file a derivative action, the plaintiff may be denied inspection if he does not have the legal standing to maintain a derivative cause of action."); Wolfe & Pittenger, § 8.06[e][1], at 8-124 ("Where . . . the stockholder's sole purpose, or only potentially viable purpose, is to pursue a derivative or class action suit for breach of fiduciary duty, the stockholder must have standing to pursue such claims in order to state a proper purpose for inspection.").

[32] *See, e.g.*, *Beiser v. PMC-Sierra, Inc.*, 2009 WL 483321 (Del. Ch. Feb. 26, 2009) ("Here, the only reasonable use for the evidence is to aid Beiser in the Federal Action through discovery that has been foreclosed by the PSLRA. . . . this is not a proper purpose under Section 220."); David A. Drexler, et al., *Delaware Corporation Law and Practice* § 27.04, at 27-16 (2011) ("the Court has indicated some hesitancy in granting Section 220 relief where the purpose is the use of documents in other pending litigation against the corporation. . . .").

[33] *See, e.g.*, *Highland Select Equity Fund, L.P. v. Motient Corp.*, 906 A.2d 156, 164–65 (Del. Ch. 2006), *aff'd* 922 A.2d 415 (Del. 2007); *Seinfeld v. Verizon Communications*, 909 A.2d 117, 122 (Del. 2006) ("The evolution of Delaware's jurisprudence in section 220 actions reflects judicial efforts to maintain a proper balance between the rights of shareholders to obtain information based upon credible allegations of corporation mismanagement and the rights of directors to manage the business of the corporation without undue interference from stockholders."); *see also* Balotti & Finkelstein, § 7.47, at 7-99.

Chancery erred in concluding it lacked the statutory authority to impose its own preclusive limitation here.

## B. Whether the Court of Chancery Should Grant United Technologies' Requested Restriction is Within the Court of Chancery's Discretion

Because the Court of Chancery held that it did not have the statutory power to impose a restriction of the kind that United Technologies proposed, it never analyzed the considerations relevant to whether it should exercise its discretion to grant the novel restriction that United Technologies sought. Given that reality, we decline United Technologies' invitation to engage in that analysis ourselves on a cold appellate record.

Instead, we believe it is more prudent to have the Court of Chancery consider how to exercise its discretion in the first instance.[34] In approaching that task, the Court of Chancery is entitled to give weight to factors such as: (i) the fact that Treppel seeks to file claims arising out of the same corporate conduct that was already the subject of derivative litigation in the Court of Chancery and this Court; (ii) United Technologies' legitimate interest in having consistent rulings on related issues of Delaware law, and having those rulings made by the courts of this state; (iii) United Technologies' adoption of a forum selection bylaw that represents a non-case-specific determination by its board of directors that internal affairs litigation involving the company should proceed in a single forum; and (iv) the investment the corporation has already made (which comes at a

---

[34] *See, e.g.*, *Brehm v. Eisner*, 746 A.2d 244, 267 (Del. 2000) (remanding the case to the Court of Chancery because "[w]e do not presume to direct the Court of Chancery how it should decide any proceeding under Section 220"); *Security First Corp. v. U.S. Die Casting and Dev. Co.*, 687 A.2d 563 (Del. 1997) (remanding the case to the Court of Chancery to "consider whether the plaintiff has carried its burden of proving that each category of books and records is essential to the accomplishment of the stockholder's articulated purpose for the inspection").

10

cost to its stockholders) in defending not only the prior derivative litigation in the Court of Chancery, but also this § 220 action.  These case-specific factors can appropriately be considered by the Court of Chancery because they involve a legitimate concern on United Technologies' part that it and its stockholders could face excessive costs and the risk of inconsistent rulings if Treppel were to file suit elsewhere.[35]

Likewise, the Court of Chancery can give weight to Treppel's inability to articulate any legitimate reason why he needs to file suit in a forum other than Delaware, and his ability to seek a modification of the use restriction under Court of Chancery Rule 60(b) if specific circumstances arise that generate such a need.[36]  Further, we note that Treppel has not shown how his rights would be unreasonably restricted by the requested limitation.  The Court of Chancery erroneously equated restricting Treppel's use of the information he learns from United Technologies' books and records with an anti-suit injunction.[37]  Such an injunction would prevent Treppel from "prosecuting actions in other states" at the risk of being held in contempt.[38]  But even if the court had acceded to United Technologies' request, Treppel would only be restricted from using the fruit of his inspection – obtained as a result of litigation in a Delaware forum – in another suit

---

[35] *See, e.g.*, *Draper v. Paul N. Gardner Defined Plan Trust*, 625 A.2d 859, 869 (Del. 1993) (affirming the Court of Chancery's decision to stay Delaware litigation in face of prior-filed corporate litigation in another forum because of the excessive costs and inefficiency threatened by having litigation over common issues proceed simultaneously in two jurisdictions).

[36] Ct. Ch. R. 60(b) ("On motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . it is no longer equitable that the judgment should have prospective application; or any other reason justifying relief from the operation of the judgment.").

[37] Opinion at 77 ("The question in front of me . . . is whether I can issue what amounts to a prophylactic anti-suit injunction. . . .").

[38] Wolfe & Pittenger, § 5.03, at 5-49 (2013).

outside Delaware, when United Technologies has already invested substantial resources in addressing not only Treppel's § 220 litigation, but also the related *Grill* litigation, and the corporation has a forum selection bylaw calling for litigation in Delaware. Being able to use the information from the books and records inspection may generate a practical incentive to file in Delaware, but the restriction would not prevent Treppel from filing elsewhere.

At the same time, the Court of Chancery should also give weight to the importance of maintaining § 220 actions as streamlined, summary proceedings that do not get bogged down in collateral issues, especially given that companies like United Technologies can move to dismiss if a petitioner like Treppel files in an improper forum in violation of a forum selection bylaw.[39] That said, a petitioner in a § 220 action cannot himself cause delay simply by asserting makeweight arguments that a relevant corporate bylaw is facially invalid or inapplicable. Treppel's argument that United Technologies' forum selection bylaw did not apply to him because it was adopted after he bought his shares[40] is inconsistent with the plain operation of the DGCL.[41] We also believe caution is needed

---

[39] By way of a case-specific example, the Court of Chancery held recently in *City of Providence v. First Citizens BancShares, Inc.*, 99 A.3d 229 (Del. Ch. 2014), that First Citizens' bylaw selecting North Carolina courts as the proper forum for litigation was valid, and it accordingly granted the defendant's motion to dismiss the plaintiff's complaint as filed in an improper forum, *i.e.*, Delaware.

[40] The Court of Chancery appropriately noted that suit outside Delaware would likely run afoul of United Technologies' forum selection bylaw. *See* Opinion at 78.

[41] 8 *Del. C.* § 109 states that "any corporation may, in its certificate of incorporation, confer the power to adopt, amend or repeal bylaws upon the directors." Moreover, "[t]he bylaws may contain any provision, not inconsistent with law or with the certificate of incorporation, relating to the business of the corporation, the conduct of its affairs, and its rights or powers or the rights or powers of its stockholders, directors, officers or employees." Here, United Technologies' bylaws empower the board to amend the bylaws "by an affirmative vote of a majority of the

12

because use restrictions under § 220(c) have traditionally been tied to case-specific factors.  For example, if a petitioner files for books and records and has a good faith purpose to investigate possible wrongdoing, and there has been no prior litigation in this or other forums, then the Court of Chancery might conclude that there is no reason to impose a use restriction of the kind United Technologies seeks here.  In that situation, the Court of Chancery can consider in its discretion whether a forum use restriction is warranted, because the possible complications the restriction injects into the § 220 litigation may not be justified by any substantial interests of the respondent corporation.  The absence of pre-existing litigation would be relevant because the company and its stockholders would not have suffered the costs of defending duplicative litigation, and the petitioner may decide not to pursue any plenary action at all.

As a more general matter, we recognize that the circumstances in which books and records are sought are diverse, and the Court of Chancery should therefore exercise its traditional care in evaluating the factors relevant to the specific application before it in determining on remand whether to impose the requested use restriction.

For the foregoing reasons, the judgment of the Court of Chancery is hereby REVERSED and REMANDED.

---

whole Board."  App. to Opening Br. at 330.  Accordingly, Treppel cannot now contend that he was not "on notice" that "the board itself may act unilaterally to adopt bylaws addressing" issues "that are [the] subject of regulation by bylaw under 8 Del. C. § 109(b)." *Boilermakers Local 154 Retirement Fund v. Chevron Corp.*, 73 A.3d 934, 955-56 (Del. Ch. 2013).  *See also Kidsco Inc. v. Dinsmore*, 674 A.2d 483, 492 (Del. Ch. 1995), *aff'd* 1995 WL 715886 (Del. Nov. 29, 1995) ("although the by-laws are a contract between the corporation and its stockholders, the contract was subject to the board's power to amend the by-laws unilaterally.") (internal citations omitted).