# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| THE CITY OF CAMBRIDGE RETIREMENT SYSTEM, | ) ) ) | |
| Plaintiff, | ) ) ) | C.A. No. 2017-0322-SG |
| v. | ) ) ) | |
| UNIVERSAL HEALTH SERVICES, INC., | ) ) ) | |
| Defendant. | ) ) | |

## <u>MEMORANDUM OPINION</u>

Date Submitted: July 10, 2017
Date Decided: October 12, 2017

Stuart Grant, Michael J. Barry, Irene R. Lax, of GRANT & EISENHOFER P.A., Wilmington, Delaware; OF COUNSEL: Mark Lebovitch, David Wales, and David MacIsaac, of BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP, New York, New York, *Attorneys for Plaintiff*.

Joseph C. Schoell, Ryan T. Costa, of DRINKER BIDDLE & REATH LLP, Wilmington, Delaware; OF COUNSEL: Gary A. Orseck, Matthew M. Madden, and Joshua S. Bolian, of ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP, Washington, D.C., *Attorneys for Defendant*.

GLASSCOCK, Vice Chancellor

This action concerns a demand for inspection of books and records, to investigate corporate wrongdoing for purposes of potential derivative litigation.[1] Defendant Universal Health Services ("UHS") is the owner and operator of hundreds of acute care hospitals, outpatient facilities, and behavioral health facilities across thirty-seven states and several countries.[2] Plaintiff The City of Cambridge Retirement System ("Cambridge") is a current and former stockholder of UHS.[3] Currently before me is a question about the limitations of judicial discretion under Section 220(c) of the Delaware General Corporation Law ("DGCL").[4] That statute conveys on this Court discretion to "prescribe any limitations or conditions" on the inspection of corporate records by a demanding stockholder "as the Court may deem just and proper." Our Supreme Court has already interpreted this broad grant of discretion as encompassing a requirement, for instance, that should subsequent litigation rely on records so obtained, the venue of that litigation shall be this Court.[5] Here, the Defendant requests a requirement that a complaint in any subsequent litigation relying on corporate records produced in this litigation be deemed to incorporate by reference all such records produced.[6] In other words, the Defendant

[1] 8 *Del. C.* § 220 ("Section 220"); Verified Complaint Pursuant to 8 *Del. C.* § 220 to Compel Inspection of Books and Records (the "Compl." or "Complaint") ¶ 4–5.
[2] Compl. ¶ 14.
[3] *Id* ¶ 13.
[4] 8 *Del. C.* § 220(c).
[5] *United Techs. Corp. v. Treppel*, 109 A.3d 553, 559 (Del. 2014).
[6] *Id.* ¶ 9; Def.'s Opening Br. on the Incorporation Condition 1 (stating that the incorporation-by-reference provision issue is "likely dispositive") ("Def.'s Opening Br.").

(via its directors) wishes to be able to rely on all documents produced in this action to support any hypothetical motion to dismiss an anticipated derivative complaint.[7] This Memorandum Opinion examines that narrow issue. For the reasons that follow, I find that the condition requested is within my discretion under the statute, and that imposing the restriction here is just and proper under these circumstances.

## I. BACKGROUND FACTS

A December 2016 article in an online publication, *BuzzFeed,*[8] described purported misconduct by UHS[9] and led to the Plaintiff's Section 220 demand[10] and several other actions.[11] The Plaintiff alleges that UHS illegally committed patients by "lur[ing] [them] into behavioral health facilities using advertisements for free wellness examinations . . . [and] trick[ing] patients into implying they harbored suicidal thoughts."[12] UHS then allegedly maximized the patients' insurance payments "until their insurance benefits ran out . . . even if there were no legitimate mental health considerations" for the continued stay.[13] The Plaintiff further

---

[7] The allegations here, which I note are allegations only, and stoutly denied by the Defendant, are that the company manipulated vulnerable people into unnecessary inpatient psychiatric treatment, draining their insurance benefits thereby. If true, in addition to being morally despicable behavior by the individuals responsible, this would represent the worst abuse of a Delaware corporate franchise of which I am aware.

[8] Compl. ¶ 18; Transmittal Aff. of Irene R. Lax in Support of Pl.'s Opening Br. Ex. 2.

[9] Compl. ¶ 18.

[10] *Id.* ¶¶ 5, 18, 20.

[11] Pl.'s Opening Br. 14; Def.'s Opening Br. 3 ("Based on the story, a securities class action and a derivative action were filed" along with three requests to inspect UHS's books and records (including Cambridge)).

[12] Compl. ¶ 15.

[13] *Id.*

describes investigations by several federal agencies for improper billing and other claims.[14] The Plaintiff seeks to determine "whether the board of directors of [UHS] . . . violated its duties by approving and/or endorsing" the alleged illegal activities and to "investigate the independence and disinterest of the Board . . . [to] determin[e] whether pre-suit demand is necessary."[15]

*A. The Plaintiff's Section 220 Demand*

The Plaintiff sent a demand letter and confidentiality agreement to the Defendant on March 9, 2017.[16] The Defendant responded on March 17, 2017 ("March 17 Letter")[17] with a competing confidentiality agreement and again on April 3, 2017 ("April 3 Letter") by stating that the Plaintiff lacked a "credible basis to suspect wrongdoing" or "any other proper purpose" for the inspection.[18] The Defendant contested the scope of the Plaintiff's demand as overbroad but offered to produce certain documents if the Plaintiff would agree to the Defendant's confidentiality agreement.[19] The Defendant's confidentiality agreement included an incorporation-by-reference provision (the "Incorporation Condition") which stated:

> [T]he Stockholder agrees that the complaint in any derivative lawsuit that it files relating to, involving or in connection with the Inspection Demand or any Confidential Inspection Material, shall be deemed to incorporate by reference the entirety of the books and records of

---

[14] *Id.* ¶¶ 3, 16.
[15] *Id.* ¶ 4.
[16] *Id.* ¶¶ 5–6.
[17] *Id.* ¶ 6.
[18] *Id.* ¶ 7.
[19] *Id.* ¶¶ 7–8.

3

which inspection is permitted.[20] The Plaintiff refused to agree to the Incorporation Condition and the Defendant refused to produce any documents.[21] The Defendant points out that the other two stockholders with Section 220 demands have agreed to an Incorporation Condition.[22] The Plaintiff seeks to compel inspection of the Defendant's books and records without agreeing to the Incorporation Condition.[23]

The Plaintiff filed its Complaint to compel inspection of books and records pursuant to Section 220 and a motion to expedite on April 26, 2017. On a May 8, 2017 teleconference, I agreed to resolve the Incorporation Condition issue on opening and answering briefs.[24] Other issues in the matter were resolved by the parties, and I consider the matter submitted as of July 10, 2017.

## II. STANDARD OF REVIEW

Section 220 of the DGCL allows stockholders of a Delaware corporation to inspect the books and records of a corporation for any proper purpose.[25] Section 220 inspections are a "qualified"[26] right used to "maintain a proper balance between the rights of shareholders to obtain information based on credible allegations of

---

[20] *Id.* ¶ 23.
[21] *Id.* ¶ 10.
[22] Pl.'s Opening Br. 14; Def.'s Opening Br. 3–4.
[23] Compl. ¶¶ 28–32.
[24] May 8, 2017 Telephonic Scheduling Conference on Pl.'s Mot. to Expedite Tr. 6:1–4.
[25] 8 *Del. C.* § 220.
[26] *United Techs.,* 109 A.3d at 559.

4

corporation mismanagement and the rights of directors to manage the business of the corporation without undue interference from stockholders."[27]  The Court of Chancery possesses "broad power"[28] to impose "other conditions as the Court deems appropriate"[29] on those inspections through consideration of "case-specific factors."[30]  Section 220 actions should be "streamlined, summary proceedings that do not get bogged down in collateral issues"[31] and that "help[] balance [corporate] rights against those of the [stockholder]"[32] while remaining cognizant of the costs of these inspections to stockholders[33] and corporations.[34]

## III. ANALYSIS

The Court of Chancery may impose "conditions as the Court deems appropriate,"[35] which may vary[36] but include confidentiality orders,[37] subsequent

---

[27] *Seinfeld v. Verizon Commc'ns, Inc.*, 909 A.2d 117, 122 (Del. 2006).

[28] *United Techs.*, 109 A.3d 553, 554 (Del. 2014).

[29] 8 *Del. C.* § 220(c).

[30] *United Techs.*, 109 A.3d at 559 (including the investment the corporation made in defending prior litigation, producing documents for the current § 220 action and the potential for excessive costs in further litigation).

[31] *United Techs.*, 109 A.3d at 561.

[32] *Amalgamated Bank v. Yahoo! Inc.*, 132 A.3d 752, 798 (Del. Ch. 2016).

[33] *See United Techs.*, 109 A.3d at 559.

[34] *See Yahoo!*, 132 A. 3d at 798.

[35] 8 *Del. C.* § 220(c).

[36] *See United Techs.*, 109 A.3d at 562 ("[W]e recognize that the circumstances in which books and records are sought are diverse, and the Court of Chancery should therefore exercise its traditional care in evaluating the factors relevant to the specific application before it in determining on remand whether to impose the requested use restriction.").

[37] *See, e.g., Disney v. Walt Disney Co.*, 857 A.2d 444, 448 (Del. Ch. 2004) ("[I]t is often the case that the Court of Chancery will condition its judgment in Section 220 cases on the entry of a reasonable confidentiality order 'to prevent the dissemination of confidential business information to 'curiosity seekers.'''").

forum restrictions,[38] and incorporation-by-reference conditions.[39] Imposition of the latter condition has the result that all documents so produced are deemed incorporated in a subsequent complaint, and thus fair game for citation and reliance in a motion to dismiss. Imposition of such a condition has been found appropriate in previous cases in this Court under Section 220,[40] on the ground that it appropriately permits a defendant to respond to "cherry-pick[ed] documents" that are taken "out of context," by pointing the Court to other documents already produced for assistance in determining the reasonableness of inferences drawn in any follow-on complaint.[41] In this way, "the Incorporation Condition resembles an approach that Delaware decisions have taken when ruling on motions to dismiss after plaintiffs have taken expedited discovery in support of preliminary injunction applications."[42]

A requested Incorporation Condition in connection with Section 220, therefore, to the extent found proper, is directed to the salutary ends of judicial and litigants' economy. It provides a remedy for the unreasonable anti-contextual use of

---

[38] *United Techs.*, 109 A.3d at 558.

[39] *See, e.g., Elow v. Express Scripts Holding Co.*, 2017 WL 2352151, at *1 (Del. Ch. May 31, 2017).

[40] *Yahoo! Inc.*, 132 A.3d at 797 (permitting "a court to review the actual document to ensure that the plaintiff has not misrepresented its contents and that any inference the plaintiff seeks to have drawn is a reasonable one."); *Reiter on Behalf of Capital One Fin. Corp. v. Fairbank*, 2016 WL 6081823, at *5 (Del. Ch. Oct. 18, 2016).

[41] *Yahoo! Inc.*, 132 A.3d at 797.

[42] *Id.* at 798.

6

a limited subset of the documents produced, in support of a complaint untenable when examined under the full universe of documents obtained. In explaining its current judicial pharmacology, this Court has noted the efficacy of an incorporation requirement; it provides the Court an alternative to relying solely on the "strong medicine"[43] of Rule 11 where a plaintiff "takes a document out of context" and "insists on an unreasonable inference that the court could not draw if it considered related documents."[44] An Incorporation Condition, in that case, allows the Court the context to address the merits of the situation under the milder and more broadly applicable regimen of the motion to dismiss.[45] Well-pled claims remain unperturbed.[46] The fundamental pleading standards for Rule 12(b)(6)[47] and Rule 23.1[48] motions also remain unchanged and the plaintiff continues as the master of her complaint.[49]

The Court of Chancery clearly has discretion to require an Incorporation Condition in a Section 220 demand, as described above.[50] The question before me

---

[43] *Id.* at 799.

[44] *Id.* at 798.

[45] *See id.* at 799. ("The more common case will involve a plaintiff's counsel seeking to draw an unreasonable inference by citing a document in isolation, not in bad faith but perhaps over-zealously in the belief that the document reveals more than it does.").

[46] *See id.*

[47] *Id.* at 798 ("The Incorporation Condition *does not change the pleading standard* that governs a motion to dismiss.") (emphasis in original).

[48] *Id.* at 798 ("The same [unchanged standard] applies for a Rule 23.1 motion.").

[49] *Id.* at 797 ("A plaintiff generally is master of its complaint and can choose what it wants to plead.").

[50] *See, e.g., Yahoo!* 132 A.3d at 797.

7

is whether I should do so here. This Court has imposed Incorporation Conditions in connection with several recent Section 220 demands.[51] The Plaintiff argues that such conditions are pernicious, in that they permit companies to manipulate the universe of documents produced and thereafter frustrate prosecution of meritorious cases[52] by "promising only to produce a self-selected subset of documents of [their] choosing, without any punishment for failing to produce [harmful] documents."[53] Of course, a similar argument could be made about the record on a motion for summary judgment, for instance; it is possible that a defendant may receive a judgment wrongfully by withholding inculpatory documents from discovery, in bad faith. The Plaintiff's point here is that in a Section 220 demand, a stockholder has substantially less ability to test the sufficiency of production, compared with a litigant receiving discovery. Assuming that this is so, does the risk of such potential malfeasance outweigh the benefits of allowing the court to eliminate complaints involving misleading citations to a limited subset of records? Our Court has several times answered that question in the negative.[54] The Plaintiff has given me no persuasive reason to distinguish those cases or to depart from that precedent.

---

[51] *See, e.g., Elow*, 2017 WL 2352151, at *9.

[52] *See* Pl. Opening Br. 11–12, 17 n.18; Pl. Answering Br. 1, 5.

[53] Pl. Opening Br. 17 n.18.

[54] *See, e.g., Yahoo!*, 132 A.3d at 798 (Vice Chancellor Laster); *Elow*, 2017 WL 2352151, at *1 (Vice Chancellor Montgomery-Reeves); *Gamco Asset Mgmt. Inc. v. iHeartMedia Inc.*, 2016 WL 6892802, at *5 (Del. Ch. Nov. 23, 2016) (Vice Chancellor Slights).

The imposition of an incorporation condition is in any particular case within this Court's discretion. The concerns raised by the Plaintiff here are not frivolous. On balance, however, I find that the interests of judicial and litigants' economy outweigh the potential detriment to which the Plaintiff points. As noted, the standard for dismissal in any follow-on complaint remains plaintiff friendly, and this Court, I think, can through proper application of that standard eliminate much of the risk of gamesmanship and improper dismissal that concern the Plaintiff here.

## IV. CONCLUSION

For the foregoing reasons, I grant the Defendant's request that production of document here be subject to an incorporation condition. The Parties should confer on the appropriate language for such a condition, provide an appropriate order, and inform me of any remaining issues in this matter.