**OF THE**
**STATE OF DELAWARE**

BONNIE W. DAVID
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Date Submitted: October 15, 2025
Date Decided: November 5, 2025

Samuel L. Closic, Esquire
Caitlin E. Whetham, Esquire
Prickett, Jones & Elliott, P.A.
1310 N. King Street
Wilmington, DE 19801

Garrett B. Moritz, Esquire
Dylan T. Mockensturm, Esquire
Benjamin M. Whitney, Esquire
Ross Aronstam & Moritz LLP
1313 North Market Street, Suite 1001
Wilmington, DE 19801

RE: *Roberta Ann K.W. Wong Leung Revocable Trust U/A Dated 03/09/2018 v. Amazon.com, Inc.*,
C.A. No. 2023-1251-BWD

Dear Counsel:

This action concerns a stockholder demand to inspect the books and records of Amazon.com, Inc. ("Amazon"). On July 28, 2025, the Delaware Supreme Court issued an opinion holding that the stockholder plaintiff established a credible basis to investigate purported anticompetitive conduct at Amazon. On remand, this letter opinion addresses the scope of, and conditions on, the stockholder's inspection.

## I.     BACKGROUND

This Court and the Delaware Supreme Court have described the factual background pertinent to this matter in three written decisions.[1]   The following recitation includes only an overview of the facts necessary to understand the Court's ruling on the remaining issues of scope and conditions on inspection.

Roberta Ann K.W. Wong Leung Revocable Trust U/A Dated 03/09/2018 ("Plaintiff") is a stockholder of Amazon, a Delaware corporation and multinational technology enterprise focused on e-commerce, cloud computing, and digital streaming.[2]   In October 2023, Plaintiff sent a letter to Amazon's board of directors demanding to inspect books and records under 8 *Del. C.* § 220 (the "Demand"), for the purpose of "investigat[ing] potential corporate mismanagement, wrongdoing, and waste" based on "concern[s] that Amazon's fiduciaries have authorized or allowed [Amazon to] take unlawful advantage of [its] dominant [marketplace] position to

---

[1] *Roberta Ann K.W. Wong Leung Revocable Tr. v. Amazon.com, Inc.*, 2025 WL 2104036 (Del. July 28, 2025) [hereinafter Sup. Ct. Op.]; *Roberta Ann K.W. Wong Leung Revocable Tr. U/A Dated 03/09/2018 v. Amazon.com, Inc.*, 2024 WL 4564754 (Del. Ch. Oct. 24, 2024) [hereinafter Mem. Op.]; *Roberta Ann K.W. Wong Leung Revocable Tr. U/A Dated 03/09/2018 v. Amazon.com, Inc.*, 2024 WL 1916089 (Del. Ch. May 1, 2024) [hereinafter Final Report].   Joint exhibits are cited as "JX ___."

[2] JX 53 [hereinafter Demand] at 1; JX 81 at 4.

engage in anticompetitive practices, leading to U.S. and international regulatory scrutiny, lawsuits, and fines."[3]

Amazon responded to the Demand, asserting that the Demand failed to state a proper purpose and was overbroad in scope, but nevertheless offering to produce "a targeted set of materials" with the caveat that "[a]ny such production would be conditioned on the prior execution of a suitable confidentiality agreement."[4] Amazon proposed a confidentiality agreement that imposed, among other conditions, a jurisdictional restriction limiting use of the inspection materials in litigation to a Delaware forum (a "Forum Restriction").[5] Plaintiff refused to agree to a Forum Restriction.[6]

On December 14, Plaintiff filed this action, and the Court held a one-day trial on a paper record on April 26, 2024.[7] On May 1, while serving as a Magistrate in Chancery, I issued a post-trial final report (the "Final Report") in which I concluded that Plaintiff failed to meet its burden to state a proper purpose for inspection by

---

[3] Demand at 1.

[4] JX 60 at 2–3.

[5] JX 49 ¶ 14.

[6] JX 58 at 1.

[7] Dkt. 56.

demonstrating a credible basis to investigate wrongdoing. Final Report at *8–9. I therefore recommended that judgment be entered for Amazon. *Id.* at *9. Plaintiff filed exceptions to the Final Report, which were assigned to Vice Chancellor Will.[8] On October 24, Vice Chancellor Will issued a memorandum opinion (the "Memorandum Opinion") overruling the exceptions, denying inspection on the basis that Plaintiff's stated purpose was so overbroad that it was facially improper. Mem. Op. at *1.

Plaintiff appealed the Final Report and the Memorandum Opinion.[9] On July 28, 2025, the Delaware Supreme Court issued an opinion (the "Opinion") reversing this Court's denial of Plaintiff's inspection. Sup. Ct. Op. at *11. In the Opinion, the Supreme Court concluded that Plaintiff had reasonably limited the scope of its Demand before trial by "identif[ying] the specific examples of purported anticompetitive conduct that [Plaintiff] sought to investigate[,]" "clarify[ing] the scope of its requested inspection to 'regulatory inquiries or lawsuits in the U.S. and Europe[,]'" and identifying an "appropriate timeframe" for the Demand of "September 2018 through the present." *Id.* at *8 (quoting Pl.'s Answering Pre-Trial Br. at 14–15, Dkt. 47).

---

[8] Dkts. 60–61.

[9] Dkt. 78.

The Supreme Court's Opinion further concluded that Plaintiff had "satisfied its burden of proving a credible basis, especially considering . . . developments" that occurred after the Final Report was issued. *Id.* Specifically, the Supreme Court found that, "taken together, [an] FTC action, [a] State of California action, [a] State of Washington consent decree, and [an] Italian Competition Authority fine [we]re sufficient to establish a credible basis from which [the] court c[ould] infer that Amazon has engaged in possible wrongdoing through its purported anticompetitive activities." *Id.* at *11. Accordingly, the Supreme Court concluded that Plaintiff stated a proper purpose for the Demand. *Id.*

The Supreme Court reversed and remanded for further proceedings to determine scope and conditions on inspection. *Id.* On October 15, the parties filed supplemental briefs addressing those issues.[10]

## II.    ANALYSIS

Two issues remain for resolution on remand. First, the Court must decide the scope of Plaintiff's inspection, and second, the Court must determine any conditions on the inspection.

---

[10] Def. Amazon.com, Inc.'s Suppl. Br. [hereinafter DB], Dkt. 88; Pl.'s Post-Appeal Br. [hereinafter PB], Dkt. 89.

### A.    Scope Of Inspection

"The scope of inspection is a fact-specific inquiry, and the court has broad discretion when conducting it." *Hightower v. SharpSpring, Inc.*, 2022 WL 3970155, at *8 (Del. Ch. Aug. 31, 2022). The stockholder plaintiff "bears the burden of proving that each category of books and records is essential to accomplishment of the stockholder's articulated purpose for the inspection." *KT4 P'rs LLC v. Palantir Techs. Inc.*, 203 A.3d 738, 751 (Del. 2019) (quoting *Thomas & Betts Corp. v. Leviton Mfg. Co.,* 681 A.2d 1026, 1035 (Del. 1996)). "Books and records satisfy this standard 'if they address the "crux of the shareholder's purpose" and if that information "is unavailable from another source."'" *KT4 P'rs LLC*, 203 A.3d at 751 (quoting *Wal-Mart Stores, Inc. v. Indiana Elec. Workers Pension Tr. Fund IBEW*, 95 A.3d 1264, 1271 (Del. 2014)). "Keeping in mind that [Section] 220 inspections are not tantamount to 'comprehensive discovery,' the Court of Chancery must tailor its order for inspection to cover only those books and records that are 'essential and sufficient to the stockholder's stated purpose.' In other words, the court must give the petitioner everything that is 'essential,' but stop at what is 'sufficient.'" *KT4 P'rs LLC*, 203 A.3d at 751–52 (citations omitted).

### 1.    Subject Matter And Time Period

The Demand sought seven broad categories of books and records.  As the Delaware Supreme Court noted, Plaintiff then narrowed its requests during the course of litigation to seek only books and records concerning "lawsuits and regulatory inquiries" in the "United States and Europe" for the period of "September 2018 through the present."  Sup. Ct. Op. at *8.  Although the Supreme Court found that the Demand was not facially improper in light of Plaintiff's proposed limitations, the Supreme Court did *not* rule on the appropriate scope of the Demand.

Amazon contends that, even as narrowed, Plaintiff's requests remain geographically and temporally overbroad.[11]  As to geography, Amazon argues that the scope of Plaintiff's inspection must be limited to alleged anticompetitive behavior in the U.S. and Italy.[12]  I agree.  Although the Supreme Court concluded "that the Italian Competition Authority fine (if considered together with government lawsuits in the U.S.) contributed to [P]laintiff's credible basis showing," the Supreme Court also "expressly rejected the European Commission's antitrust investigation as evidence supporting [P]laintiff's credible basis showing."[13]  Because Plaintiff has not

---

[11] DB at 6.

[12] *See id.* at 6–7.

[13] *Id.* at 6.

demonstrated a credible basis to investigate anticompetitive conduct in all of Europe, its inspection is appropriately limited to the U.S. and Italy.

Relatedly, Amazon argues that Plaintiff's proposed inspection period—September 2018 through the present—is overbroad.[14]  At trial, Plaintiff proposed beginning the inspection with September 2018 because that is when the European Commission "began examining whether Amazon abused its dual role as a seller of its own products and a marketplace operator."[15]  But again, the Supreme Court agreed that the European Commission's investigation does not support a credible basis to investigate wrongdoing.  Sup. Ct. Op. at *11 n.106.  The inspection period will instead begin with July 1, 2021, six months prior to the Italian Competition Authority's decision imposing the fine.[16]

### 2. Plaintiff Must Begin With Formal Board Materials Before Seeking Informal Board Materials.

The Demand seeks "minutes, resolutions, reports, presentations, or memoranda made, reviewed by, or provided to the Board" concerning eighteen listed topics, as

---

[14] *Id.* at 6–7.

[15] Pl.'s Answering Pre-Trial Br. at 14; Demand at 2.

[16] Although Amazon argues that inspection should begin with "January 2022 for documents relating to the three U.S. actions," DB at 7, I believe a date range of July 1, 2021 through the present for the entirety of Plaintiff's inspection is appropriate.

well as "communications to or from the Board" addressing those same topics.[17] To determine which documents are necessary and essential to accomplish a proper purpose, decisions interpreting Section 220 prior to its recent amendment[18] group requests for books and records into three categories:

- "Formal Board Materials," or "board-level documents that formally evidence the directors' deliberations and decisions and comprise the materials that the directors formally received and considered";

- "Informal Board Materials," which "generally will include communications between directors and the corporation's officers and senior employees, such as information distributed to the directors outside of formal channels, in between formal meetings, or in connection with other types of board gatherings"; and

- "Officer-Level Materials," which are "communications and materials that were only shared among or reviewed by officers and employees."

*Hightower*, 2022 WL 3970155, at *9 (quoting *Lebanon Cty. Empls.' Ret. Fund v. AmerisourceBergen Corp.*, 2020 WL 132752, at *24–25 (Del. Ch. Jan. 13, 2020), *aff'd*, 243 A.3d 417 (Del. 2020)).

---

[17] Demand at 18–20.

[18] Because the Demand was made in October 2023, the recent amendments to 8 *Del. C.* § 220 do not apply. *See* Del. Sen. Sub. 1 for S.B. 21, 153rd Gen. Assem. § 3 (Mar. 24, 2025) (enacted) ("Sections 1 and 2 of this Act do not apply to or affect any action or proceeding commenced in a court of competent jurisdiction that is completed or pending, or any demand to inspect books and records made, on or before February 17, 2025.").

Formal Board Materials are the starting point—and typically the ending point—for a sufficient inspection. *Woods, Tr. of Avery L. Woods Tr. v. Sahara Enters., Inc.*, 2020 WL 4200131, at *11 (Del. Ch. July 22, 2020). Decisions considering requests for Informal Board Materials and/or Officer-Level Materials in the form of email communications "reflect the principle that the Court of Chancery should not order emails to be produced when [Formal Board Materials] would accomplish the petitioner's proper purpose, but if non-email books and records are insufficient, then the court should order emails to be produced." *KT4 P'rs LLC*, 203 A.3d at 752–53. Whether Formal Board Materials are sufficient for a stockholder's purposes is fact dependent, but generally speaking, a broader inspection may be needed if the board did not honor traditional corporate formalities, the alleged wrongdoing happened exclusively at the officer level, or the Formal Board Materials fail to address key events. *See Oklahoma Firefighters Pension & Ret. Sys. v. Amazon.com, Inc.*, 2022 WL 1760618, at *12 (Del. Ch. June 1, 2022); *Hightower*, 2022 WL 3970155, at *10.

As noted in the Final Report, Amazon offered to produce Formal Board Materials responsive to the Demand, subject to a confidentiality agreement with a Forum Restriction, but Plaintiff declined. *See* Final Report at *4–5. Without the benefit of those documents, Plaintiff has not, in my view, met its burden to demonstrate that Formal Board Materials will be insufficient to accomplish its

purpose. If, however, Plaintiff reviews the Formal Board Materials and determines they are inadequate for its purpose, it may renew its request for Informal Board Materials.[19]

### 3. The Requests

For the sake of clarity, the Court's rulings on the seven categories of books and records identified in the Demand are as follows.

Request No. 1 seeks Formal Board Materials concerning eighteen topics.[20] With the limitations described above, the following topics seek information appropriately targeted to Plaintiff's proper investigation purpose:

a. the Company's compliance with antitrust or competition laws, including state and federal antitrust laws in the U.S. and in the EU,[21] including investigations into Amazon's compliance with such laws and lawsuits filed against the Company regarding antitrust laws or anticompetitive conduct, including, but not limited to, the FTC Complaint, California's lawsuit, and Washington's lawsuit;

c. settlements related to antitrust laws, including, but not limited to, the Washington state settlement;

---

[19] Plaintiff contends that Informal Board Materials are necessary based on FTC allegations that Amazon failed to preserve certain communications relevant to its investigation. *See* PB at 19–20. Even assuming those allegations are true, I am unconvinced that they support an order requiring Amazon to produce informal materials that allegedly no longer exist.

[20] Demand at 18–20.

[21] To be clear, these topics are limited to Amazon's compliance with antitrust or competition laws in the U.S. and Italy only, as explained above.

> d. any investigation into Amazon's antitrust compliance by foreign or domestic governments, including, but not limited to, the FTC, California, and Washington;

> p. internal inquiries or investigations into antitrust law compliance.[22]

Formal Board Materials responsive to the above requests are necessary and essential to Plaintiff's investigation purpose and must be produced.

Numerous other topics identified in Request No. 1 are, however, overbroad. Those topics include, among several others, "how the Company processes search results on its website, including algorithms used," "the price surveillance group or team and the algorithms that team uses," "executives or directors using the Signal Messaging application," and "complaints from sellers regarding prices."[23] While those requests identify broad topics discussed in the FTC complaint, they are insufficiently tailored to Plaintiff's purpose of investigating alleged anticompetitive conduct in the U.S. and Italy. Amazon must produce Formal Board Materials in response to these requests only to the extent such documents concern the FTC action, State of California action, State of Washington consent decree, or Italian Competition Authority fine.

---

[22] Demand at 18–19.

[23] *Id.* at 19.

Request No. 2 seeks Informal Board Materials concerning the same eighteen topics.[24]  As noted above, that request is denied.  If Plaintiff reviews the Formal Board Materials and determines they are inadequate for its purpose, it may renew its request for Informal Board Materials.

Request No. 3 seeks "[b]ooks and records sufficient to identify all Company internal controls, policies, and procedures in place to ensure Amazon's compliance with antitrust laws are adequately and timely reported to management and the Board."[25]  Such documents are necessary and essential to Plaintiff's purpose and must be produced.

Request No. 4 seeks "Amazon's policies, procedures, or practices regarding Demand No. 1."[26]  This request is granted only to the extent it seeks policies and procedures concerning antitrust compliance in the U.S. and Italy.

Request No. 5 seeks "[f]ormal communications between the Company and any governmental investigative agency concerning antitrust laws or anticompetitive conduct."[27]  This request is granted to the extent it is coterminous with the geographic

---

[24] *Id.* at 20.

[25] *Id.*

[26] *Id.*

[27] *Id.*

scope identified in the Demand—in other words, only to the extent it seeks formal communications with agencies in the U.S. and Italy.

Request No. 6 seeks documents to investigate the independence of Amazon's directors. Since Plaintiff has established a credible basis to investigate purported anticompetitive conduct at Amazon, it is entitled to director questionnaires to investigate director independence. *See Gross v. Biogen Inc.*, 2021 WL 1399282, at *17 (Del. Ch. Apr. 14, 2021) ("This court regularly orders companies to produce director questionnaires where a plaintiff has demonstrated a credible basis to suspect possible wrongdoing.") (quoting *Pettry v. Gilead Sciences, Inc.*, 2020 WL 6870461, at *27 (Del. Ch. Nov. 24, 2020)). Plaintiff has not persuaded the Court that any additional documents are necessary for this purpose.

Request No. 7 asks for "[t]he documents provided in response to any other Section 220 demands investigating the same or similar matters identified in this demand."[28] This catch-all request lacks the "rifled precision" that Section 220 requires and is therefore denied to the extent not covered by Plaintiff's other requests. *See Amalgamated Bank v. Yahoo! Inc.*, 132 A.3d 752, 775 (Del. Ch. 2016) ("The production order 'must be carefully tailored.' Framed metaphorically, it should be

---

[28] *Id.*

'circumscribed with rifled precision' to target the plaintiff's proper purpose." (citation

omitted)), *abrogated on other grounds by Tiger v. Boast Apparel, Inc.*, 214 A.3d 933

(Del. 2019).

### B.     Conditions On Inspection

"[T]he Court of Chancery has wide discretion to shape the breadth and use of

inspections under [Section] 220 to protect the legitimate interests of Delaware

corporations." *United Techs. Corp. v. Treppel*, 109 A.3d 553, 559 (Del. 2014); 8 *Del.

C.* § 220(c) ("The Court may, in its discretion, prescribe any limitations or conditions

with reference to the inspection . . . .").[29]  The parties agree that Plaintiff's books and

records inspection will be conditioned on entry of a confidentiality agreement.[30]  They

disagree, however, on whether the confidentiality agreement should include a Forum

Restriction.

---

[29] Section 220(b)(3), as recently amended, states that:

> [t]he corporation may impose reasonable restrictions on the confidentiality, use, or distribution of books and records and may require, as a condition to producing books and records to a stockholder under any demand under this subsection, that the stockholder agree that any information included in the corporation's books and records is deemed incorporated by reference in any complaint filed by or at the direction of the stockholder in relation to the subject matter referenced in the demand.

8 *Del. C.* § 220(b)(3).  As noted above, the amendment does not apply here.

[30] DB at 12; PB at 20.  The parties also agree that the confidentiality agreement will provide that information included in the books and records is deemed incorporated by reference in any later-filed complaint.  DB at 12; PB at 20.

Interpreting Section 220 prior to its recent amendment, the Delaware Supreme Court has held that the Court of Chancery's discretion to prescribe conditions on an inspection includes the authority to impose a Forum Restriction. *Treppel*, 109 A.3d at 558–59. Deciding whether such a provision is appropriate is "inherently case-by-case and 'fact specific,'" but the Court may "give weight to factors" such as:

> (i) the fact that [the plaintiff] seeks to file claims arising out of the same corporate conduct that was already the subject of derivative litigation in the Court of Chancery and [the Supreme] Court;
>
> (ii) [the corporation's] legitimate interest in having consistent rulings on related issues of Delaware law, and having those rulings made by the courts of this state;
>
> (iii) [the corporation's] adoption of a forum selection bylaw that represents a non-case-specific determination by its board of directors that internal affairs litigation involving the company should proceed in a single forum; and
>
> (iv) the investment the corporation has already made (which comes at a cost to its stockholders) in defending not only the prior derivative litigation in the Court of Chancery, but also this § 220 action.

*Id.* at 558, 560 (citation omitted). The Court may also consider the plaintiff's "inability to articulate any legitimate reason why [it] needs to file suit in a forum other than Delaware, and [its] ability to seek a modification of the use restriction under Court of Chancery Rule 60(b) if specific circumstances arise that generate such a need." *Id.* at 560.

An evaluation of the *Treppel* factors leads me to conclude that a Forum Restriction is appropriate under the specific facts of this case. To date, Amazon has received at last four demands seeking to investigate breaches of fiduciary duty based on purported anticompetitive conduct. The receipt of multiple demands seeking to investigate the same Delaware law-based claims presents a concrete risk that future derivative litigation arising from those demands may, in the absence of a Forum Restriction, span multiple forums, run up defense costs, and yield inconsistent results. Amazon has established that it has a legitimate interest in receiving consistent rulings from Delaware courts on fiduciary duty claims governed by Delaware law.

Although Amazon's governing documents did not include a Delaware forum selection provision at the time the Demand was made, Amazon has since adopted a forum selection bylaw, reflecting the board's determination that derivative litigation should proceed in Delaware. Plaintiff insists that I should not consider developments that occurred after it made the Demand, but I am aware of no precedent compelling me to ignore the board's highly relevant determination that internal affairs litigation should proceed in a single Delaware forum. Certainly, the "integrity of the judicial

process and the finality of judgments"[31] does not require me to do so when the Court did not previously rule on conditions for inspection.

Amazon has now invested substantial resources by litigating two books and records actions in this Court arising from the same underlying conduct.

And finally, Plaintiff has failed to articulate any legitimate reason why it should be permitted to file suit outside of Delaware. Plaintiff simply argues that it should not be required to "commit in advance to the ends to which it will put the books and records."[32] A Forum Restriction does not require Plaintiff to commit to the "ends" of its inspection—it does not restrict *what* Plaintiff can do with the books and records, only *where* Plaintiff may bring litigation if it chooses to do so. Plaintiff offers no other reason for seeking to file litigation in another forum, nor does it explain why its ability to seek to modify any Forum Restriction under Rule 60(b) is inadequate to address its concerns.

As a result, Plaintiff's books and records inspection will be conditioned on a Forum Restriction in the parties' confidentiality agreement.

---

[31] PB at 23.

[32] *Id.* at 21 (quoting *AmerisourceBergen Corp.*, 2020 WL 132752, at *13).

## III.   CONCLUSION

For the reasons explained above, Plaintiff is entitled to books and records subject to the scope and conditions in this letter opinion.  The parties shall confer on a form of order memorializing the rulings herein.

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Vice Chancellor

cc:   All counsel of record (by File & ServeXpress)